143 So.2d 909 (1962)
Lois Mary McCULLERS, Appellant,
v.
STATE of Florida, Appellee.
No. D-123.
District Court of Appeal of Florida. First District.
July 3, 1962.
Rehearing Denied September 20, 1962.
*910 T.J. Jennings, Jr., and James T. Norton, Greencone Springs, for appellant.
Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
STURGIS, Judge.
Lois Mary McCullers, defendant below, appeals from a judgment of conviction of manslaughter in the death of her husband.
We paraphrase in inverse order the points of law involved: (1) Whether the evidence is sufficient to sustain the verdict. (2) Whether the trial judge committed prejudicial error by offering to have the personal needs of the sequestered jurors attended to by the sheriff and his deputies. (3) Whether it was error to overrule defendant's challenge of juror Frank C. Jones for cause. (4) Whether it was error to admit defendant's alleged confession in evidence, where it is made to appear the same was voluntarily given in her home in the presence of the coroner, who was also the committing magistrate, but not as an incident to any official proceeding, and said official did not advise defendant of her constitutional rights. (5) Whether it was error to permit an expert witness, Dr. William Ingram, Jr., to state an opinion as to appellant's sanity at the time of the commission of the alleged crime, where it is made to appear that the same was based in substantial part upon extrajudicial and undisclosed statements made to the witness by third persons concerning defendant's actions shortly prior to and immediately following the homicide.

Point 1
The jury rendered a verdict finding defendant guilty of manslaughter and a careful review of the record discloses that there was ample evidence, aside from the challenged evidence of Dr. William Ingram, Jr., hereinafter discussed, to support that verdict. It is elemental that an appellate court will not substitute its judgment for that of the jury on questions of fact.

Point 2
The jury selected to try this case was sequestered. After the jury was selected the trial judge announced that the sheriff would make arrangements for clothing that they might need and for delivery of any messages they might wish to give to their families or others. A juror inquired what was to be done with his automobile and the judge directed the question to a deputy sheriff, who was a witness for the state, and the deputy said: "We can either park them here or get them home to your family or pick up your family and have them pick them up. Either way you would like to have it done we can arrange it." The judge also informed the jury that the state would pay for their subsistence and room. He inquired of the deputy sheriff if he knew of any reason why any juror should need any money, and the deputy *911 replied that he did not. When alternate jurors were selected on the following day, the judge informed them that arrangements for the needs of other jurors had been made through the sheriff's office, that they were entitled to the same consideration, and that the sheriff would be glad to take care of their requests. The defendant made no objection to the foregoing transactions and on this appeal asserts for the first time that this conduct of the trial judge tended to place the sheriff and his office in a highly complimentary position and to prejudice the defendant to the extent that she could not possibly receive a fair trial. Considering defendant's failure to object and the innocuous nature of these transactions, appellant's argument here is picayune and without merit.

Point 3
The defendant's challenge of juror Frank C. Jones for cause was properly rejected. A careful review of the questions addressed to him on the voir dire and his responses thereto, which we find no need to set out verbatim, reflect that he was fully qualified to serve. He meets the test recently restated in the case of Singer v. State (Fla.), 109 So.2d 7, 24:
"* * * the true test to be applied should be not whether the juror will yield his opinion, bias or prejudice to the evidence, but should be that whether he is free of such opinion, prejudice or bias or, whether he is infected by opinion, bias or prejudice, he will, nevertheless, be able to put such completely out of his mind and base his verdict only upon evidence given at the trial. Lamb v. State, [90 Fla. 844] 107 So. 530, supra, at page 535, citing Hopt v. People, 120 U.S. 430, 7 S.Ct. 614, 30 L.Ed. 708."

Point 4
The record on appeal clearly reflects that a confession made by appellant at her home following the shooting was voluntary in character and not given as an incident to any legal proceeding. It was therefore admissible despite any failure of the coroner, who was also the committing magistrate and present at the time, to warn her of her constitutional rights. See Leach & Smith v. State (Fla.), 132 So.2d 329. See also Dawson v. State (Fla.), 139 So.2d 408, in which Mr. Justice Thornal, in a specially concurring opinion exhaustively summarizes the subject of the admissibility of extrajudicial confessions in state court prosecutions in those instances where the confessor is not first taken before a magistrate and advised of his constitutional rights as delineated by Section 902.01, Florida Statutes, F.S.A., and as prescribed by Section 901.23, Florida Statutes, F.S.A. Justice Thornal's opinion places the subject in juxtaposition with the decision of the United States Supreme Court in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, and in accord with Rule 5, Federal Rules of Criminal Procedure, 18 U.S.C.A., as defined in Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. The subject confession was duly admitted in evidence.

Point 5
We come now to the critical question of the propriety of admitting in evidence the opinion of Dr. William Ingram, Jr., a witness for the state, as to whether the defendant was legally sane at the time of the commission of the alleged crime, where it appears that the opinion was based in substantial part on conversations between the doctor and persons purporting to know the facts concerning the conduct of the defendant prior to and immediately following the homicide, the nature of which conversations is not disclosed by the testimony of Dr. Ingram or of any other witness appearing in the case.
To the indictment charging the defendant-appellant with the crime of murder in the first degree, she entered a general plea of not guilty and also a plea of not guilty *912 by reason of insanity. In support of the latter plea she produced several witnesses who testified that she was not sane at the time of the commission of the alleged crime. In rebuttal the state produced as a witness one William Ingram, Jr., M.D., who qualified as a neuropsychiatrist. On direct examination and as a predicate to eliciting from Dr. Ingram his professional opinion as to the sanity or insanity of the defendant on the night she shot and killed her husband, he testified that he conducted an examination of the defendant on only one occasion, saying:
"On that particular day I conducted a psychiatric interview and examination, and a brief neurological examination, and performed an electroencephalographic test."
Upon being asked if he did anything else in connection with her that would be considered by him as a basis for his final opinion in the matter, he said:
"In order to properly ascertain my opinion, anyway, what the condition of the patient was at the time of an offense, or an alleged offense, when I don't examine her at that particular time I draw inferences on the basis of her behavior immediately before and immediately after the time during which the crime was supposed to have been committed, so that I talked to individuals who had seen her before and immediately after the crime was supposed to have been committed."
He then identified by name the persons with whom he talked concerning defendant's mentioned behavior, but the nature of such conversations is not divulged by any testimony presented to the jury or otherwise in this case.
In the course of further examination on direct, the witness was asked:
"All right. What did you find as a result of that examination that might have some bearing in this matter?"
at which point the defendant interposed an objection on the ground, inter alia, in substance, that no proper predicate had been laid for the testimony elicited in that his findings were based on hearsay and were therefore inadmissible. The objection was overruled and thereupon in brief order the following questions were asked and answers given without further objection being interposed by the defendant:
"Q. Well, now, Doctor, pursuant to your appointment by this Court, and based on your training, study, and experience as a psychiatrist, based further upon your examination of this defendant, and all the tests that you made, and all the information that you received pertinent to this inquiry, I will ask you, please, sir, to state to the Court and the jury what is your professional opinion on the question as to the sanity or the insanity of Mrs. McCullers on the night of May 2nd, 1961, when it is alleged that she shot and killed her husband?
"A. I thought that she was legally sane, sir." (Emphasis supplied.)
* * * * * *
"Q. All right, now, would you elaborate just what you construe the statement `legally sane' to mean?
"A. That she could tell the difference between right and wrong."
* * * * * *
"Q. You have said about right and wrong. What is your professional opinion, Doctor, based upon your examination of this woman as to whether she did or did not at the time of the killing of Mr. McCullers know that the act was wrong?
"A. I think that she knew that it was wrong."
It will be noted that the foregoing questions were not stated in the form of a hypothetical, but called directly for objective findings of the witness.
*913 Defendant contends that the above testimony was inadmissible because the doctor's opinion is based in substantial part on hearsay, the reference being to the mentioned conversations between the witness and the persons purporting to state defendant's actions prior to and immediately following the homicide. On cross-examination Dr. Ingram testified as follows:
"Q. Doctor, after you made the examination about which we have talked which you have described, the e.e.g. and the results of your interview, and about that, now, let me ask you if your opinion now that you have given here was based on your findings, or based in part on what Mrs. Boatright told you?
"A. Yes, sir.
"Q. They were? All right, now, did you also base them in part on what Mrs. Yoemens told you?
"A. Yes, sir.
"Q. Uh-huh, all right. Now, then, you don't know those facts of your own knowledge, do you?
"A. No, sir; I was not there.
"Q. That's right. You don't know them. So, now, if the facts that those two people gave you were not the true and correct facts about this thing, would that have a tendency possibly to change your findings here and your testimony before this jury?
"A. I think that would depend upon which things they told me.
"Q. That's what I say.
"A. Of course  yes, I would say that as long as I am basing my opinion in part on something, what anybody says, if they tell me a lie and misrepresent things, of course, my opinion would be wrong.
"Q. Yes, sir. Your opinion would possibly be different under those circumstances?
"A. Yes, sir."
The state contends, primarily, that defendant's above mentioned objection was premature  in anticipation of testimony in futuro  and that failure to interpose specific objections to the above quoted questions constitutes an implied consent to the admission of the testimony, even assuming it was otherwise inadmissible; secondly, that there is no rule requiring that the history employed by a physician in arriving at an opinion must have been in possession of and given by a witness on the trial of the cause.
It is well settled that where no objection is interposed to testimony, it will be regarded as having been received by consent and its admissibility will not be considered on appeal. English v. State, 122 Fla. 77, 164 So. 848; Gaines v. State, 97 Fla. 908, 122 So. 525; Holmes v. State, 89 Fla. 336, 103 So. 642; Sims v. State, 59 Fla. 38, 52 So. 198; Wilson v. Jernigan, 57 Fla. 277, 49 So. 44; Sims v. State, 54 Fla. 100, 44 So. 737. However, if a valid objection to the admission of evidence is overruled, the failure of the aggrieved party to interpose objections at a later point to testimony elicited from the same witness upon a subject falling specifically within the same classification of the testimony previously admitted over such objection will not operate as an implied consent to the admissibility of such evidence or prejudice the appellant in assigning error to its admission.
In Heald v. Thing, 45 Me. 392, insanity of the defendant was relied upon to avoid a sale of property. A physician who, shortly before the sale, had visited the defendant in consultation with his attending physician, was not permitted to give in evidence the declarations made to him at that time by either the defendant's wife, *914 physician, or other attendant, as to his previous symptoms or condition. On appeal from a judgment for plaintiff the Supreme Court of Maine in affirming said that while the acts and declarations of the party, the condition of whose mind is the subject of investigation, may be given in evidence,
"* * * the declarations, sought to be proved in this case, * * * were the declarations of parties competent to be witnesses, unaccompanied by any acts pertinent to the issue then before the Court. Those declarations, if they related to facts within the knowledge of the persons making them, could only be proved by those persons themselves. As proposed to be proved, they were clearly within the description of hearsay evidence, and were properly excluded."
* * * * * *
"The declarations of the nurse, wife and attending physician, are all clearly inadmissible and were rightly excluded as hearsay. What those declarations were, we do not know. They might have been of facts which the declarants had observed, personally, or they might have been the idle gossip of ignorant and garrulous women. It is because such hearsay cannot be subject to the ordinary tests of truth in courts of justice, that it is excluded, as too uncertain and unreliable to constitute a basis for judicial action.
"But in this case, while it is admitted that the declarations above referred to were properly excluded, it is strenuously contended that an opinion based wholly upon them, (for the witness was permitted to give his opinion based upon his own examination and observation,) should go to the jury as competent evidence, upon which they would be authorized to act, on the ground that the witness, being a person of skill, is authorized to determine the proper sources, in connection with his personal examination, from which to derive those opinions.
"The proposition contains two fundamental errors. First, it makes the witness decide the question of the competency of evidence, thus putting him in the place of the Court. Next, while it excludes the declarations as incompetent testimony to go to the jury, it receives, as competent evidence, an opinion, based upon that incompetent testimony, thus attempting to elevate the stream above the fountain, to make a corrupt tree bring forth good fruit. The declarations of the nurse and wife may have been only mere inferences on their part, and on those inferences the doctor is desired to draw an inference, and this last inference, being called the opinion of an expert, is made to assume the character of competent and substantial evidence."
* * * * * *
"If it should be said that it cannot be known how much the opinion of the witness might have been based upon what he learned from the nurse or wife of the defendant, the answer would still be the same; the declarations of those persons, thus made, could not properly form an element in the basis of facts, upon which the witness could predicate a legal opinion, to be given as evidence before a jury."
The case of Flannagan v. State, 106 Ga. 109, 32 S.E. 80, is directly in point. The defendant, being indicted for murder, pleaded insanity. On the trial the trial judge overruled defendant's objection to the following question propounded by the state's counsel to one of the state's expert witnesses:
"State whether, in your opinion, from your examination of [the defendant], from all that you know of him, have observed of him, or heard of him, he was laboring, at the time this crime was committed, under any overmastering delusion."
*915 The witness answered in the negative. The Georgia Supreme Court, reversing a judgment of conviction, said:
"An expert on insanity, as was the witness of whose evidence complaint is here made, may give an opinion based upon his own examination of a person, upon his observation of that person, or upon any state of facts, supported by some evidence in the case, which he assumes as true. The jury should be informed whether he bases his opinion on his own knowledge or upon a hypothetical state of facts, and should know what portion of the evidence he has assumed to be true in forming his opinion. In the present case, the witness gave an opinion which may have been based, in whole or in part, upon what he had heard of the defendant, and we think it should not have been received. Suppose another expert witness had testified that, from what he had heard, the homicide was committed under an overmastering delusion; how could the jury have possibly derived any assistance from this evidence? The two experts might have testified thus contradictorily, and yet been each correct, because of their having heard very different things of the defendant, and the jury would have been unable to form any conclusion as to the truth of the facts upon which either opinion was based. `It has never been held that a medical expert has the right to give in evidence an opinion based on information which he has derived from private conversations with third parties.' Rog.Exp.Test. § 46; [Louisville, N.A. & C.] Railway Co. v. Shires, 108 Ill. 617, 630. * * In the present case, the expert witness testified as to his opinion, based, to how great an extent does not appear, upon what he had heard. The jury had no possible means of knowing whether his opinion was not based upon an assumption of the truth of rumors or reports which the jury did not believe to be true, or of whose truth there had been submitted to them absolutely no evidence. It is therefore clear that the question was improper, because it allowed an opinion based upon what the witness had heard of the accused, and that the evidence was inadmissible. Nor was the evidence otherwise unobjectionable. It was not competent for the expert to give in evidence an opinion based upon what he knew of the accused, without stating what he knew of him. The opinion may have been based upon facts known to the witness, but altogether unknown to the jury; or the jury, had they known such facts, might have attached to them so little importance as to disregard an opinion known to be based upon them, and to lose faith in an expert who regarded them as sufficient foundation for a positive opinion as to such a weighty matter. As was said in the case of Burns v. Barenfield, 84 Ind. 43, 48: `It is the clear right and duty of the jury to judge of the truth of the facts upon which the opinion of the expert is based. * * * It is obvious that, where the expert delivers his opinion from what he supposes he knows about the case, he must assume and exercise both the functions of the court and the jury,  he determines that what he knows is both relevant and true. * * *' The testimony of this expert * * * was, therefore, tantamount to the expression of an opinion that the accused was guilty of murder."
Upon the evidence before the jury in the case on appeal, who can say whether their verdict was or was not brought about by the evidence given by Dr. Ingram, one of the principal witnesses for the state, and going to the heart of the very subject which the jury had to decide? It cannot be said that their verdict was not materially influenced by such testimony or that it did not serve to remove from their minds a reasonable doubt which otherwise *916 might have existed as to the sanity of the accused. The question to which defendant's objection was interposed is so broad in scope as to have elicited an answer based in part on the extrajudicial and undisclosed statements made to the witness by the persons with whom he communicated for the specific purpose of arriving at an opinion as to defendant's sanity or lack of sanity at the time of the commission of the alleged crime. It is commonly recognized in trial practice that where objection to a particular line of testimony has been overruled, repeated objections to further questions involving the same type of testimony, resulting in the same ruling, sometimes irks the trial judge to the point that his demeanor conveys to the jury  far louder than words  his displeasure with the persistent objector and unquestionably tends to prejudice the jury against his side. The client should not be subjected to this hazard and we do not subscribe to the state's contention that failure to renew the objection constituted consent, under the circumstances of this case, to the admission of the challenged testimony.
Adhering to the principles announced in the within cited cases, we hold that it was material error to permit witness Ingram to give the testimony in question on the basis stated by him. The judgment of conviction must be and it is reversed and this cause remanded for a new trial.
Reversed and remanded.
CARROLL, DONALD K., C.J., and RAWLS, J., concur.

On Petition for Rehearing
PER CURIAM.
The state has filed a petition for rehearing to which the appellant has filed a reply. The petition is without merit and is hereby denied.
The state has also requested that we certify the decision herein to the Supreme Court on the ground that it passes upon a question of great public interest. We do not deem the decision to have that effect and the request will not be granted.
Appellant's reply departs from the traditional purpose of such pleading to state the legal premises relied on in resistance of the petition, in that it engages in unseemly sarcasm which does not become the pleader or serve the best interest of the profession, e.g.: The position of the petitioner is described as an attempt to "trap" this court into ruling on matters not connected with this appeal. Again, that the petitioner "is seeking advice from the Court, which advice the State might receive by studying a beginner's treatise on the rules of evidence. * * *" And elaborating thereon, counsel for appellant states:
"We do not feel the District Court is under duty to instruct the State on evidence, for we feel that such instructions are given in courses at the University of Florida and the State Attorney and Attorney General and their assistances (sic) can certainly brush up on their knowledge of the rules of evidence by attending such courses."
At another point appellant's counsel generously observed that this court
"clearly discussed the subject of whether or not an opinion of an expert can be admitted in evidence based on hearsay statements and cited with completeness in its decision the rule of evidence which should be followed in the State of Florida."
The complimentary glow engendered by that statement is immediately dissipated by the following impolite statement:
"It is suggested that the appellee's counsel might read these decisions as it might help them to understand the basic rules of evidence set forth to be adhered to by the District Court."
*917 Counsel for appellant concluded the reply to the petition for rehearing by suggesting, without having so moved, that this court should strike appellee's petition for rehearing. This gratuitous suggestion is as improper as the wholly irrelevant sarcasm directed by counsel for appellant to their adversary fellows of the bar, and while such may be rationalized as the unintended product of over-enthusiastic advocacy, it does not eliminate or excuse the act. Of our own motion, we therefore strike the within quoted offending portions of appellant's reply.
CARROLL, DONALD K., C.J., and STURGIS and RAWLS, JJ., concur.