156 So.2d 8 (1963)
James Matthew LAND, Appellant,
v.
STATE of Florida, Appellee.
No. 31949.
Supreme Court of Florida.
July 31, 1963.
Rehearing Denied September 24, 1963.
*9 J. Donald Bruce, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and A.G. Spicola, Jr., Asst. Atty. Gen., for appellee.
CALDWELL, Justice.
James Matthew Land, defendant below, was found guilty of murder in the first degree, without recommendation of mercy. The motion for a new trial, timely filed by the defendant's court appointed attorney, was denied, the defendant was adjudged guilty of murder in the first degree and sentenced to death. The defendant, for the purposes of appeal, was found to be insolvent. His lower court counsel was allowed to withdraw and other counsel was appointed to prosecute this appeal.
The transcript shows that the defendant attacked the victim, Mrs. Mattie A. Groom, a person 80 years of age and weighing approximately 100 pounds, in her home in Jacksonville on December 11, 1961, in which attack she suffered facial and neck bruises, broken ribs and lacerations of her arms. *10 The victim was hospitalized the day of the attack and remained under hospital care until about 2:45 o'clock P.M. on January 14, 1962, when she was taken by ambulance to her daughter's home for convalescence. Upon arrival she was placed in bed but quickly developed a high temperature. At 7:00 o'clock P.M. of the same day she was returned by ambulance to the hospital where she remained until her death on January 25, 1962. The cause of her death was assigned as bronchial pneumonia and adrenal insufficiency. In the course of the trial the doctors testified the death of the victim resulted from the wounds administered by the defendant.
The defendant contends that the trial court erred in permitting leading questions by the State Attorney to the treating physicians and erred in allowing the physicians to express opinions as to the cause of death. The record discloses no error on these points.
The defendant, 39 years of age, upon arraignment pleaded not guilty to the indictment and gave notice of his intention to rely upon insanity as one of his defenses. The court thereupon directed two psychiatrists to make examination of the defendant and report their conclusions to the court, with copies to counsel for the defendant and the State Attorney.
Doctor Ekwall, one of the experts appointed, a licensed physician and surgeon with practice limited to neurology and psychiatry, testified that the defendant was, on the date of the examination, competent, knew right from wrong and was sane. Doctor Moore, a licensed medical doctor specializing in psychiatry, another of the experts, testified the defendant was not insane, was capable of making a proper decision and that he could properly confer with his counsel and defend himself.
Doctor Ingram a doctor of medicine specializing in neuropsychiatry, appointed by the court at the request of the defendant, upon being called to the stand by the defense, testified that at the time of his examination the defendant was well oriented and in possession of his faculties; that there was no evidence of hallucinations or delusions; that he had a partial amnesia for the events in question but that he did not think the defendant was psychotic or insane at the time of the examination. Doctor Ingram testified the defendant's past history revealed social deprivation; that he left school at the age of 12, began drinking at an early age and, he thought, was a chronic alcoholic; that he saw no evidence of any tumor or infectious process but that the electroencephalographic tracing confirmed the history the defendant gave of "blackouts," probably a result of long abuse of the brain by use of alcohol; that the defendant was of dull normal intelligence; that he had reached the conclusion the defendant, on the day of the alleged offense, did know the difference between right and wrong and was probably not psychotic, although perhaps under the influence of alcohol.
Upon being asked whether his examination indicated the defendant had a "blackout" on the date of the offense, the doctor testified: "No, sir; not  well, it depends on what you mean by a `blackout.' I don't think that he was suffering at that time with delirium tremens. I think he probably was under the influence of alcohol." Upon being asked whether he would say the defendant was so full of alcohol that he was incapable of distinguishing between right and wrong, the witness answered, "No, sir."
On cross examination by the State Attorney, Dr. Ingram testified that after he had examined the defendant and talked with defendant's counsel he had talked with an assistant State Attorney. He did not say what if any information he secured from that source nor whether he considered it in reaching his conclusions. The State Attorney asked the witness: "So everything you know about this man, about his past history and about all this mental condition you talk about is what he told you?" And the witness answered, "Yes, sir." The *11 doctor upon inquiry as to whether in his opinion the defendant knew the difference between right and wrong, stated, "I believe he did know the difference." Upon further inquiry as to whether he believed the defendant was legally sane responded, "Yes, sir."
The defendant, relying upon McCullers v. State,[1] contends that because his witness, Dr. Ingram, in the course of his study of the defendant and his background, talked with the assistant State Attorney, he should not have been permitted to express an opinion as to the defendant's sanity, when that opinion was "based in part on conversations with parties who were not before the court."
The point is without merit for several reasons, the first being that nothing in the record indicates that the doctor's opinion was in anywise based upon his conversation with the State Attorney but, on the contrary, shows affirmatively his opinion was based upon his examination of the defendant and what the defendant told him. Dr. Ingram was the defendant's witness and there was no timely objection to his testimony on cross examination. Two other competent psychiatrists, as to whom no question was raised, testified to the sanity of the defendant.
The psychiatric phase of medicine, relatively new, involves tenuous delving in the nebulous processes of mentality. The conclusions are seldom positive and unquestionable and, weighed by the jury's impression of the expert's capability and professional integrity, are to be evaluated in the light of all attendant qualifying factors. Such an opinion touching the intangible state of the subject's mind must as of course be based upon such sources of information as are available, including the subject himself, his background, his behavior and the related facts and circumstances.
Clearly, an opinion based upon long and painstaking study of the subject and personal knowledge of his history is worthy of great credence, while an opinion, based solely upon information offered by third persons, would be of little or no value and not admissible. But an opinion, founded upon the expert's scientific examination of the subject and conversations with third persons, would not be inadmissible, absent a showing that his conclusion was based in major or substantial part upon such conversations. In the McCullers case, supra, the expert testimony was based almost entirely upon conversations with third persons not before the court while, in this case, such conversations appear to have been incidental and of little or no influence. To restrict the scope of the examination to the subject alone would often preclude the expert's consideration of pertinent data. However, the extent to which he relied on information obtained other than through first-hand observation, as disclosed by direct and cross examination, is an element to be considered by the jury as it assesses the credibility of the report. Without attempting to prescribe an immutable yardstick we hold that the psychiatrist must be allowed some latitude and that, in the instant case, the trial court did not err in the admission of Dr. Ingram's evidence.
The defendant urges that the trial court erred in permitting the victim's daughter to testify touching the scene of the crime and the wounds suffered by the victim as previously described by two physicians. The record shows that the daughter of the victim, returned to the home of her mother, with whom she lived, in the afternoon following the alleged attack to find her mother prone on the floor of the bathroom; that she tried unsuccessfully to arouse the victim, that her wrists were taped, her clothing torn, her throat swollen and discolored, the skin on both arms torn and blood coming from her nose, mouth and eye. Inasmuch as this witness had discovered *12 the body and there was a lapse of some time between her viewing the victim and the observations made by the physicians, we find no error in the exercise of discretion by the trial court in permitting the testimony. Indeed, by reason of proximity in point of time, we think the testimony was necessarily allowed. It was significantly different from that of the physicians in that it described the scene of the crime and the attending circumstances and was not objectionable as cumulative.
Cecil K. Noel, Jr., the court reporter, testified the defendant was interrogated by the assistant State Attorney in the presence of several officers of the police department and the sheriff's office and that, in response to questions, the defendant said he had not been mistreated, had not been offered any hope of reward or fear of punishment, had been treated all right and that what he would have to say would be freely and voluntarily told. The defendant stated that he had called the victim to ask about a room; that he had purchased a roll of tape before going to the victim's house with the intention of robbing her. He said the victim showed him the room and gave him a glass of water after which he grabbed her by the neck and dragged her into the bathroom, choked and beat her and tore her clothes off trying to find something on her.
The defendant insists that the court erred in allowing the defendant's confession in evidence without first determining how long he had been interrogated and in what manner the interrogation took place. The record shows that counsel for the defendant, when asked by the court if he wished to proffer any testimony on behalf of the defendant with respect to the free and voluntary character of the statement, declined. We find no improprieties in the circumstances surrounding the voluntary confession by the defendant and, to the contrary, must hold that the record evidences complete fairness. We can find no merit in this point on appeal.
The appellant questions the propriety of the court's charge to the jury to the effect that the burden of proof falls upon the defendant to show an intervening cause of death when the State has proven that wounds from which death might occur have been inflicted. The State argues correctly that the alleged error cannot be raised by this appeal because of the failure of the defendant to timely object but, rather than deciding the question in that guise, we point out that the instruction as given was correct. Hopper v. State, 54 So.2d 165 (Fla. 1951); Penton v. State, 114 So.2d 381 (Fla.App.2nd 1959).
In addition to reading the briefs and hearing argument of counsel we have examined the evidence in detail, as required by Fla. Stat., Section 924.32, F.S.A., and have determined the evidence supports the verdict and judgment. The interests of justice do not require a new trial. The judgment is affirmed.
It is so ordered.
DREW, C.J., concurs specially with opinion.
TERRELL, THOMAS, ROBERTS, THORNAL and O'CONNELL, JJ., concur.
DREW, Chief Justice (concurring specially).
I concur with the opinion of the Court subject only to the qualification that in my judgment the issues raised with reference to admissibility of expert testimony herein should be disposed of on the sole ground of lack of any record showing that the expert actually relied on third party declarations not in evidence, or that his opinion was based in substantial part upon same, and that on this theory the decision upon this point accords with that in State v. McCullers, Fla.App. 1962, 143 So.2d 909.
NOTES
[1] 143 So.2d 909 (Fla.App.1st 1962).