201 So.2d 706 (1967)
Charles Alexander CIRACK, Appellant,
v.
The STATE of Florida, Appellee.
No. 35250.
Supreme Court of Florida.
July 5, 1967.
Rehearing Denied September 12, 1967.
*707 William W. Judge, Daytona Beach, for appellant.
Earl Faircloth, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
O'CONNELL, Chief Justice.
The appellant, Charles Alexander Cirack, and Richard Vernon White were tried and convicted of murder in the first degree of Moses Jackson. The jury recommended mercy for White, but not for Cirack who seeks reversal here of the judgment of guilty and sentence of death. White is not involved in this appeal.
On May 8, 1965 Cirack and White, driving in Cirack's convertible automobile, saw two negroes standing on a street corner in Titusville. As they drove by White asked if they were hitchhiking and Andrew Cash, Moses Jackson's companion, replied in the negative.
The evidence reveals that Cirack and White then went to the house of George Reid Scobie, Jr., from whom they obtained a 38 calibre revolver with four shells. Scobie, who testified for the State, stated that Cirack and White told him that they had seen "these hitchhikers and wanted to rob them."
Cirack and White returned to the two negroes, who were still on the street corner, and offered them a ride to their home in Oviedo. Jackson and Cash finally entered the car and White drove away with the two negroes sitting in the rear and the two white men in the front. After traveling some 15 or 20 miles, and into Volusia County, White turned off the highway, parked the car, and got out saying he was going to urinate. Jackson also left the car leaving Cirack and Cash in it. Cirack then told Cash that he wanted "3 bucks apiece from you guys." While Cash and Jackson were talking over this demand from a distance, Cash in the car and Jackson some yards away, Cirack ordered Cash out of the car. Cash refused. Cirack got out of the car, pulled the pistol and holding *708 it on Cash saying, "Get out or I'll blow your brains out." Jackson grabbed White and moved toward Cirack ultimately getting close enough to push White aside and grab for Cirack's gun hand. Cash testified he saw Cirack get his hand loose and shoot Jackson in the face. Cash went to where Jackson had fallen, knelt, and turned him over. Although White pleaded that he not do so, Cirack then shot Cash in the back of his neck and shoulder as he either knelt by Jackson or tried to escape through Cirack's legs. Cash escaped to the highway and hailed a motorist who took the two negroes to a hospital in Titusville where Jackson died shortly thereafter. Cash recovered from his wound and testified for the State.
We have omitted many details of the incidents prior to and following the shooting for we do not feel them to be significant to the issues we must decide.
Appellant contends first that the evidence does not support the verdict of murder in the first degree. On the contrary after careful and critical reading of the whole record we find that the evidence adequately supports the verdict.
Secondly, appellant contends that the trial judge committed error in ruling that the opinion of a court appointed expert witness, a psychiatrist, as to the sanity of the defendants "must be based upon your examination, observations, and tests of the defendants, and not on the factual matters stated by the defendants to you, which are not in evidence and which you assumed to be true."
Whether or not this ruling might or might not be infallible as an abstract statement or rule is unimportant. Under the circumstances in which it was made in this case it is absolutely correct. A resume of these circumstances will so demonstrate.
The defendants pled not guilty, and not guilty by reason of insanity. Thereafter, the court appointed Dr. Estes and Dr. Chambers, psychiatrists, to examine Cirack and White as to their mental condition. Both of these doctors examined each of the defendants and filed written reports of their findings and opinions. Both reports found the defendants sane at the time of the examinations in November, 1965. Dr. Chambers reported that in his opinion Cirack was also sane, i.e., knew right from wrong, on May 8, 1965, the day Moses Jackson was killed. However Dr. Estes reported that in his opinion on May 8th Cirack became temporarily unable to exercise his ability to determine right from wrong, as a result of the effects of alcoholic intoxication on his basically unstable mind and emotionally immature personality. It was the opinion of Dr. Estes that although Cirack's temporary emotional derangement, resulting from consumption of too much alcohol and too little food, produced impaired judgment, it did not constitute a fixed mental disorder of psychotic insane proportions.
After the state rested its case, the defense rested without producing any evidence. Then on motion of the defense the court ordered that both psychiatrists be called as court witnesses.
Dr. Estes was called first and after qualifying questions by the trial judge and a few preliminary questions by the prosecution the jury was excused on request of the prosecution. In making this request the prosecution explained that it wished to lay a "predicate for a certain matter that should be done outside of the hearing of the Jury."
The prosecution then continued its examination of Dr. Estes. During this examination it was established that in arriving at his opinion, that on May 8, 1965 Cirack was unable to distinguish between right and wrong or to exercise ordinary good judgment, Dr. Estes relied upon statements made to him by the defendants in November, 1965 that they had consumed large quantities of alcoholic beverages and eaten too little food for a three day period before and including the day Moses Jackson was killed. Dr. Estes stated that he *709 assumed these statements of the defendants to be true, however, no evidence had been or was thereafter introduced that would support those statements.
The prosecution then stated to the court that the testimony and opinion of Dr. Estes as to "sanity" of the defendants was inadmissible in evidence because "it invades the province of the Jury to determine the truth and validity of the facts and circumstances upon which he bases his opinion."
Following argument of both sides the trial judge made the ruling quoted above and explained its effect to Dr. Estes. The jury was recalled, the defense attempted to have Dr. Estes state his opinion as to the ability of the defendants to distinguish between right and wrong, and Dr. Estes was prevented from giving his opinion under the court's ruling here under attack. Here it should be noted again that the defense offered no evidence, and while the state's evidence showed that the defendants did drink alcoholic beverages on the day of the crime it did not support the statements which Dr. Estes said the defendants made to him. On the contrary, the state's witnesses Cash and Scobie both testified that the defendant Cirack may have been tight but was not intoxicated or "drunk."
Although the opinion of Dr. Estes appears to have been treated as dealing with the sanity of Cirack it obviously did not. The doctor stated in his report and on examination outside the presence of the jury that he found no evidence of a psychosis, mental disease or disorder of the mind in Cirack. His opinion held merely that Cirack's judgment and ability to distinguish between right and wrong was impaired by too much alcohol and too little food. The law recognizes insanity super-induced by the long and continued use of intoxicants so as to produce "a fixed and settled frenzy or insanity either permanent or intermittent." Garner v. State, 1891, 28 Fla. 113, 9 So. 835; Cochran v. State, 1913, 65 Fla. 91, 61 So. 187; and Britts v. State, 1947, 158 Fla. 839, 30 So.2d 363. This condition was not found in Cirack.
Dr. Estes opinion could only go to proving the defense of voluntary intoxication, not insanity. While not a complete defense, voluntary intoxication is available to negative specific intent, such as the element of premeditation essential in first degree murder. Garner v. State, supra.
Dr. Estes, as an expert, could properly testify as to the effect of a given quantity of intoxicants on Cirack's mind. But the question here is whether he could furnish the basis for his testimony and opinion by testifying to the self-serving declarations of the defendants from which he concluded that Cirack had consumed about a fifth of whiskey per day for three days and eaten only "nick-nacks." We think not.
The rule that hearsay evidence, including self-serving declarations and statements, is not admissible is essential to the truth finding process of our adversary system of jurisprudence. The basic reason for its existence is that it prevents the fabrication of testimony and evidence. This is accomplished by requiring the maker of a statement to testify in person and be subject to cross-examination so that the trier of fact, be it judge or jury, will have the opportunity of judging the veracity of the statements. The cases holding such evidence inadmissible are legion. See those cited in 13 Fla.Jur., Evidence, Sections 208, 209.
We know of no reason to depart from the hearsay rule in this case simply because the one who would testify to or utilize the self-serving statements is an expert. The rules relating to opinion evidence likewise require that the opinion of an expert be based on facts in evidence, or within his knowledge. 32 C.J.S. Evidence § 546(63); 9 F.L.P., Evidence, Section 172 and cases cited therein. Also Arkin Construction Company v. Simpkins, Fla. 1957, 99 So.2d 557. Admittedly, there are *710 exceptions to this rule, but none of them are applicable here.
The opinions in McCullers v. State, Fla. App. 1962, 143 So.2d 909, and Land v. State, Fla. 1963, 156 So.2d 8 constitute exceptions to or a relaxation of the rule against use of hearsay evidence by an expert in the formulation of an opinion as to sanity. The reasons for the exception are explained in Land. These cases are not controlling in this one because the opinion involved here dealt not with insanity, but voluntary intoxication.
Even if the opinion of Dr. Estes can be said to go to the question of sanity, and he be entitled to the latitude granted in the above cited cases, it still would not be admissible. The fact remains that Dr. Estes opinion was based entirely on the unsupported factual assumption that Cirack had consumed the quantities of alcohol and food discussed above. The exception to the rule and latitude granted in the McCullers and Land cases cannot be construed to mean that an expert can by repeating them at trial establish as fact self-serving statements of the subject of his inquiry. As we understand those cases they simply mean that for the purpose of arriving at his scientific opinion as to sanity the expert may consider matters not put in evidence, unless such matters are the major or substantial basis for the opinion. In the instant case the unsupported statements of the defendants were the major or substantial, if not whole, foundation for the excluded opinion.
This case is unique in that the two psychiatrists were not called as witnesses until both sides had rested their case. It is unique, also, in that Dr. Estes was examined outside the presence of the jury; it was then determined that the basis for his opinion was not supported by the evidence; and the trial judge ruled in advance that he would not be permitted to give his opinion to the jury.
Appellant argues that it was error for the trial judge to proceed as he did. He says that the doctor should have been allowed to state his opinion to the jury without first relating the facts upon which it is based citing Underhill's Criminal Evidence 5 ed., Vol. 2, Section 460, and Blocker v. State, 1926, 92 Fla. 878, 110 So. 547. There is no doubt that a trial judge may adopt this procedure. But the procedure followed by the trial judge in this case is a wise one. It is to be commended, not condemned. In such an extra-jury proceeding the court can determine whether the opinion of the expert is admissible, or not, which is far better than letting the jurors hear an opinion and then telling them they cannot consider it, a feat difficult for the best disciplined mind. Such a procedure is fairest to the party offering the expert because it gives him some advance notice of the court's ruling so that he may offer evidence to make the opinion admissible, if desired. In the instant case the appellant had this opportunity and elected not to utilize it.
As required by our consciences, our oaths and F.S. § 924.32, F.S.A., we have carefully considered all of the proceedings in this case, and that the ends of justice do not require a new trial.
The judgment and sentence are affirmed.
ROBERTS, DREW and CALDWELL, JJ., concur.
THOMAS, J., dissents with Opinion.
THORNAL and ERVIN, JJ., dissent and agree with THOMAS, J.
THOMAS, Justice (dissenting).
I respectfully dissent from the majority opinion.
The appellant, Charles Alexander Cirack, and one Richard Vernon White were indicted for the murder of one Moses Jackson *711 alleged to have been committed from a premeditated design to effect Jackson's death. There was no charge that the killing was done in the perpetration of any felony.
The appellant, Cirack, first challenges the sufficiency of the evidence to support the verdict of guilty without recommendation of mercy, but I think it would be more logical to deal first with his criticism of the ruling of the court with reference to the admissibility of the testimony of a psychiatrist about Cirack's ability the day of the homicide to distinguish right from wrong.
This point urged by the appellant should be determined so appellant insists and the appellee concedes, and I agree, by application of the decision of the District Court of Appeal, First District, in McCullers v. State, Fla., 143 So.2d 909, and of this court in Land v. State, Fla., 156 So.2d 8. I am unable to agree that the opinions in those cases rule this one. The problem presented in this case is how much a psychiatrist called as an expert may rely for his conclusion about the subject's sanity on information given by the subject himself, while in McCullers the court held inadmissible testimony of a psychiatrist based substantially on what third parties not available for cross-examination had told him about the subject's behavior.
If the rule permitting the admission of the testimony of a psychiatrist is too loosely applied, an avenue for the introduction of hearsay would become disproportionate to the true object of the inquiry. On the other hand, it seems to me only logical that a psychiatrist should be permitted in his determination of the sanity of a subject to take into account what the subject tells him in the course of the examination. Land v. State, supra. The line of demarcation between the area when such hearsay may be considered and when it may not be is finely drawn. But at this point is seems decided that the prognosis may not be based wholly on testimony of third parties who are not available for cross-examination, McCullers v. State, supra, and "an opinion, founded upon the expert's scientific examination of the subject and conversations with third persons, would not be inadmissible, absent a showing that his conclusion was based in major or substantial part upon such conversations." [Italics supplied.] Land v. State, supra. The court in Land distinguished between that case and McCullers by stating that in the latter the expert opinion "was based almost entirely on conversations with third persons", while in the former such conversations were "incidental and of little or no influence." Somewhere between these two definitions is the dividing line and we apprehend, using them as guides that decision of the problem as it arises must be determined by the facts surrounding the expert testimony in the case at hand.
Back to the case immediately under consideration  I find that during the examination of the psychiatrist the ruling of the court with reference to the information on which his opinion was to be based did not comport either with the ruling in McCullers or the ruling in Land. In the first place the information on which the psychiatrist proposed to base his reply to the question about the sanity or insanity of the defendants on the date of the homicide was not obtained from third persons but from the defendants themselves. Gist of the trial judge's ruling is found in this language used in addressing the psychiatrist: "The court is of the opinion that your opinion, any opinion that you may give, in this case, upon the examination of either the State Attorney or the attorney for the defendants, must be based on your examination, observations and tests of the defendants, and not on factual matters stated by the defendants to you, which are not in evidence, and which you assumed to be true."
Since the psychiatrist then on the witness stand was obviously an expert, it seems appropriate to give his reaction to the judge's ruling. First he asked if he was to understand from the court's ruling that he could not "express any opinion based on *712 data or information gathered on questioning of the subjects at the time of examination." Then came this further comment from the judge: "You may base your opinion on your observations, on the answers they gave, the manner in which they were given, but not by assuming factual matters stated by them as being true." Continued the judge:
"Of course, you would not know what those things are until such time that they might, if they do, propound such hypothetical questions to you. In the abstract, you would not be permitted to venture an opinion assuming the factors of facts or statements assumed to be true.
"I believe that is about as clear as I can state it for you."
When the judge concluded this pronouncement he asked the doctor if he thought or understood, whereupon the doctor replied:
"I must admit, I am having a little trouble adjusting my thinking to this. The psychiatric examination, itself, is based on the facts as reported by the person being examined, and in addition to the way in which these facts are given, whether or not they hang together or not, and if they are corroborated by other statements. So, it might just be then that if each opinion has to be based on something that is found to be unequivocally true, that this would leave [sic] for a very limited psychiatric examination, to say the least."
The attorney for Cirack then propounded to the doctor the question whether or not in an examination to determine the mental condition of a person it was recognized procedure to question the subject about factual matters having bearing on his mental condition. He answered in the affirmative.
In a report theretofore filed in the case this doctor had stated that on the day of the homicide Cirack had become temporarily unable to distinguish right from wrong because of the effects of alcoholic intoxication on his basically unstable and emotionally immature personality which combined with lack of adequate nourishment impaired his judgment though it did not constitute a fixed mental disorder of psychotic "`insane' proportions".
The doctor concluded with the statement that he was unable to give an opinion as to the mental condition of Cirack on the day of the homicide if, as I understand the record, he was bound to the restricted interpretation by the judge.
I have quoted extensively from the colloquy among judge, attorney and witness to give accurately the picture formed by the exchanges.
The result was to keep from the jury testimony which might have produced a different verdict, that is, one of not guilty or one of guilty with recommendation of mercy.
It is easily seen what might have resulted by strict adherence to the judge's view. If the defendant had been forced to obtain testimony of outsiders about the amount of alcohol he had consumed or the scarcity of the food he had taken, assuming such witnesses had been available, he would likely have lost the privilege, to his lawyer, of the concluding argument to the jury which is considered by lawyers in the criminal practice to be a distinct advantage and has been secured by statute at least since 1853. Sec. 918.09.
Because of my view that the ruling constituted reversible error and the case must be re-tried on that account, I have not felt bound to examine and report all the evidence as we are ordinarily required to do under Sec. 924.32(2).
It is my conviction that the judgment should be reversed and the case remanded for a new trial.
THORNAL and ERVIN, JJ., concur.