478 So.2d 1050 (1985)
Mark Andrew BURCH, Appellant,
v.
The STATE of Florida, Appellee.
No. 65168.
Supreme Court of Florida.
October 3, 1985.
Rehearing Denied December 27, 1985.
H. Dohn Williams Jr., Fort Lauderdale, Appointed Sp. Public Defender, for appellant.
Jim Smith, Atty. Gen. and Sarah B. Mayer, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Mark Burch appeals his conviction for first-degree murder and his sentence imposing the death penalty. We have jurisdiction, article V, section 3(b)(1), Florida Constitution. We reverse the conviction and remand for a new trial.
The facts of the case are relatively simple. The victim and casual friends of appellant became involved in a physical dispute concerning the alleged failure of the victim to pay for a car he bought from one of the friends. Appellant was not present during the dispute, but became aware of it and objected to the victim's conduct. On the same day as the dispute, appellant obtained a shotgun and asked the friends to drive him to the victim's home. Appellant did not know the victim, but had obtained his address. The friends drove appellant to the vicinity of the victim's apartment. After exiting the car, appellant walked down the street carrying the shotgun, pausing only to question an uninvolved man as to his identity and to ask, unsuccessfully, for directions to the address of the victim. After arriving at the victim's apartment, the victim identified himself to appellant while standing in the doorway. The appellant immediately killed him with a short-range shotgun blast. Appellant then walked away, pausing to dispose of the shotgun in a nearby dumpster. Numerous eyewitnesses saw the events, before and after the killing, and identified appellant as the killer. He was apprehended within hours.
As the facts show, there was no doubt that appellant committed the homicide. After examination by an expert at appellant's request, the expert opined that appellant was legally sane at the time of the murder and was competent to stand trial. At the initial trial in November 1983, appellant did not deny that he committed the homicide, but attempted to show that he was incapable of forming a specific intent to commit first-degree murder because of voluntary intoxication arising from habitual drug abuse and alcoholic consumption in the *1051 months and hours before the homicide. A mistrial was declared when the jury split between jurors supporting a first-degree murder conviction and others supporting a conviction of second-degree murder. On retrial in January 1984, the jury returned a verdict on first-degree murder and a recommended penalty of death.
Appellant presents three issues for our consideration. We find one of the issues dispositive. The theory of appellant's defense was that he had voluntarily ingested a highly dangerous drug, phencyclidine (PCP), for a period of months before the homicide, including the day of the homicide, along with quantities of alcohol and other illicit drugs and was incapable of forming a specific intent. Defense witnesses testified that they had seen appellant ingesting PCP on a regular basis for months prior to the homicide, and that he was "spaced-out" on a more-or-less continual basis. These witnesses testified they had themselves used PCP or were otherwise familiar with its effects on users. Appellant also testified to his daily use of PCP, alcohol and other drugs, and that he had ingested PCP on the day of the homicide and remembered none of the critical events. Prosecution witnesses, who observed appellant immediately before and after the homicide, also testified to his strange behavior.
In support of the defense theory of voluntary intoxication, the defense proffered that a toxicologist appointed as an expert would testify that ingested PCP was known to have substantial effects on the human body including delirium, hallucinations, violent behavior, disorientation, and amnesia. The trial court denied the testimony on the grounds that the expert could not himself testify that appellant had ingested PCP, that the lay witnesses were not qualified to testify that the drugs ingested were in fact PCP, and that appellant's testimony that he had ingested PCP was self-serving and did not show that he had ingested PCP. In support of the judge's ruling, appellee maintains that a trial court has wide discretion on the admissibility of evidence and that, in view of Cirack v. State, 201 So.2d 706 (Fla. 1967), there was no abuse of discretion. Appellee misconstrues Cirack. In Cirack the accused attempted to introduce the opinion of an expert that the accused had been temporarily unable to distinguish right from wrong because of the effects of alcoholic intoxication on his unstable mind and emotionally immature personality. The expert's opinion was based entirely on the accused's statements made to him during the private examination that the accused had consumed large quantities of alcohol and little food during the three days preceding the murder. The accused did not testify and there was no evidence put before the court that the accused had, in fact, consumed large quantities of alcohol and little food in the three-day period. On the contrary, the evidence was that while the accused might have consumed some alcohol, he was not intoxicated or "drunk." We explicitly recognized that the defense of voluntary intoxication was available to negate specific intent and that the testimony of the expert could have been properly received on the effect of a given quantity of alcohol on the accused's mind. However, under the circumstances of that case, we held that it was proper to refuse the testimony. This was so because the basis for the expert opinion was not in the record for the jury's consideration; it consisted entirely of statements made privately to the expert. The defense was attempting to use the expert to improperly introduce hearsay statements that the accused had consumed large quantities of alcohol and that the expert assumed those statements to be true. As we noted, under these circumstances, the hearsay evidence would not be subject to cross-examination and the trier-of-fact would not have the opportunity to judge the veracity of the statements.
The circumstances of the instant case are radically different from those in Cirack. All the testimony relating to appellant's use of drugs and other intoxicants was *1052 given in court subject to cross-examination, and the jury could properly determine the credibility of the witnesses and weigh the evidence.[*] The jurors could not be expected to know the specific effects of PCP on the human body. Thus, the testimony of the expert toxicologist was critical to appellant's defense of voluntary intoxication and to the jury's enlightened consideration of the question. The trial court abused its discretion in determining there was no predicate of credible evidence on which the expert could testify, thereby effectively removing from the jury the critical question of whether appellant was capable of forming a specific intent to commit first-degree murder.
Appellant raises two other points which we need not address in light of our remand for a new trial. The first is that the trial court erred in not appointing a specifically named expert on the effects of PCP on the human body. The request for appointment of the specific expert was made and denied before the first trial, but was not renewed prior to the second trial.
The second additional point of appellant is that the trial court erred in imposing the death penalty. In view of our reversal and remand for a new trial and the grounds on which we do so, it would be premature, and perhaps prejudicial, to examine hypothetical aggravating and mitigating factors which may or may not be applicable following retrial.
We reverse the conviction of first-degree murder and remand for a new trial consistent with this decision.
It is so ordered.
BOYD, C.J., and OVERTON, McDONALD and EHRLICH, JJ., concur.
ADKINS, J., dissents.
NOTES
[*] The decision of the appellant to take the stand and offer his testimony, and to call the other defense witnesses, was, of course, self-serving. This does not mean, however, that it can be rejected out-of-hand, or that the trial court can usurp the responsibility of the jury to determine the credibility of the witnesses or the weight of the evidence.