826 So.2d 932 (2002)
William REAVES, Appellant,
v.
STATE of Florida, Appellee.
No. SC00-840.
Supreme Court of Florida.
June 20, 2002.
Rehearing Denied September 9, 2002.
*934 Neal A. Dupree, Capital Collateral Regional Counsel, and William M. Hennis, III, Assistant CCRC, Law Office of the Capital Collateral Regional Counsel-South, Fort Lauderdale, FL, for Appellant.
Robert A. Butterworth, Attorney General, and Celia A. Terenzio, Assistant Attorney General, West Palm Beach, FL, for Appellee.
PER CURIAM.
William Reaves, a prisoner under sentence of death, appeals the summary denial of his motion for postconviction relief *935 filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons detailed below, we remand for an evidentiary hearing on Reaves' claim that counsel was ineffective.

FACTS
Reaves was convicted of first-degree murder for the shooting death of an Indian River County deputy sheriff and was sentenced to death. On direct appeal, this Court reversed the conviction. Reaves v. State, 574 So.2d 105 (Fla.1991). Upon retrial, a jury again found Reaves guilty and recommended the sentence of death by a vote of ten to two, a recommendation which the trial court followed. On direct appeal, this Court affirmed the conviction and sentence, finding the relevant facts as follows:
The victim, Deputy Sheriff Richard Raczkoski, at or about 3 a.m. on September 23, 1986, responded to a 911 call from a phone booth outside a Zippy Mart near Vero Beach. The deputy acknowledged his arrival at the Zippy Mart and inquired about outstanding warrants on William Reaves. Within minutes of the call, the deputy was found near the phone booth with four gunshot wounds from which he died later that morning. A piece of paper inside the deputy's vehicle had written on it: William Reaves, black male, 4336 38th Avenue, date of birth 12/30/48.
Witness Whitaker, who discovered the deputy, testified that he saw a black man wearing red shorts and a white T-shirt running from the scene in a manner similar to men in Vietnam under fire. (William Reaves served in Vietnam.) Witness Hinton was ruled unavailable to testify, [pursuant to] section 90.804(1)(b), Florida Statutes (1991), and his testimony from the 1987 trial was read into the record. According to Hinton, Reaves, wearing red shorts and carrying a gun wrapped in a white T-shirt, came to his apartment after the shooting and said: "I done ... up. I just shot a cop, I just shot a police." Hinton testified that Reaves quoted the deputy as saying, "Don't shoot me. Don't shoot me. Don't kill me," to which Reaves responded, "One of us got to go. One of us got to go, me or you." Hinton had no trouble understanding Reaves; his speech was not slurred and he appeared to be in full control of his faculties. Witness Fredell testified that Reaves was wearing red shorts and a white T-shirt on the afternoon prior to the early-morning murder and did not appear to be under the influence of alcohol or drugs.
Detective Pisani quoted Reaves as stating that while he and the deputy were conversing, a gun fell out of Reaves' shorts. The deputy put his knee on the weapon, Reaves pushed the knee back, picked up the gun, refused to surrender it, and in a panic and "wired on cocaine" shot the deputy as he was running away. Reaves admitted that he emptied the seven-round clip of his .38 when he fired. A firearms expert testified that Reaves' gun was a type that required a pull of the trigger each time it was fired; it was not an automatic.
The jury convicted Reaves of premeditated first-degree murder and recommended death by a vote of ten to two. The trial judge imposed the death sentence, finding three aggravating circumstances[2] and no statutory mitigating circumstances. The judge found three nonstatutory mitigating circumstances.[3.]
[2.] Reaves was previously convicted of a felony involving the use or threat of violence to the person; the capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody; and the capital felony was especially *936 heinous, atrocious, or cruel. § 921.141(5)(b), (e), (h), Fla. Stat. (1985).
[3] Reaves was honorably discharged from military service, had a good reputation in his community up to the age of sixteen, [and] was a considerate son to his mother and was good to his siblings.
Reaves v. State, 639 So.2d 1, 3 (Fla.1994) (footnote 1 omitted).
On February 21, 1996, Reaves filed his initial motion for postconviction relief. He later amended this motion and filed the current motion on February 17, 1999. After a Huff[1] hearing, the trial court entered an order summarily denying the motion for postconviction relief without holding an evidentiary hearing. Reaves appeals this order and raises fourteen claims on appeal.[2] We find that several of these claims are procedurally barred,[3] insufficiently pled,[4] or premature.[5] For the reasons discussed below, we conclude that the trial court erred in summarily dismissing Reaves' claim of ineffectiveness of trial counsel.

ANALYSIS
This Court has recently summarized the applicable standard when reviewing a summary denial of a postconviction motion:
[A] defendant is entitled to an evidentiary hearing on a postconviction relief motion unless (1) the motion, files, and records in the case conclusively show that the prisoner is entitled to no relief, or (2) the motion or a particular claim is legally insufficient. The defendant bears the burden of establishing a prima facie case based upon a legally valid claim. Mere conclusory allegations are not sufficient to meet this burden. However, in cases where there has been no evidentiary hearing, we must accept the factual allegations made by the defendant to the extent that they are not *937 refuted by the record. We must examine each claim to determine if it is legally sufficient, and, if so, determine whether or not the claim is refuted by the record.
Freeman v. State, 761 So.2d 1055, 1061 (Fla.2000) (citations omitted). With this standard in mind, we turn to the individual claims which Reaves now raises.

A. Guilt Phase Ineffective Assistance of Counsel
In Reaves' first claim, he contends that his counsel performed below the constitutional threshold of adequate representation as established in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[6] Reaves alleges seven instances which allegedly constitute ineffective assistance of counsel: (1) counsel was ineffective in failing to present a voluntary intoxication defense and a related Ake[7] claim; (2) counsel conceded guilt and failed to object to evidence of drug use and other "bad acts"; (3) counsel was ineffective during jury selection; (4) counsel failed to prepare for and cross-examine certain witnesses; (5) counsel failed to adequately investigate and present various mitigation including Reaves' family background; (6) counsel failed to object to prejudicial testimony during the penalty phase; and (7) counsel failed to have sufficient mental health experts.
In Reaves' first subclaim, he asserts that he is entitled to an evidentiary hearing regarding whether trial counsel was ineffective in failing to present a voluntary intoxication defense. The record shows that during the guilt phase, the State introduced Reaves' confessionevidence which could have supported a voluntary intoxication defense since Reaves claimed to be "coked up" when he fired the gun. Defense counsel, however, never argued this defense or presented any evidence which supported voluntary intoxication despite the fact that there was other evidence which could have supported this theory. During the jury charge conference, the trial judge noted that during Reaves' first trial, the jury was informed as to this defense, and it was decided that such a jury instruction should be given again. Notwithstanding this fact, Reaves' counsel never mentioned voluntary intoxication during closing arguments, and never discussed how the evidence could have supported this theory or how cocaine affects the user. During the penalty phase, even more evidence was presented which would have supported a voluntary intoxication defense, including additional testimony that Reaves was on drugs at the time of the crime. Moreover, numerous witnesses testified that Reaves had a history of serious drug abuse dating back to the Vietnam War, that he became involved in "heavy drugs" towards the end of his service in Vietnam, and that his prior convictions were drug-related.
This case is similar to Patton v. State, 784 So.2d 380 (Fla.2000), a case in which *938 defense counsel knew of but did not present evidence that the defendant had a substantial history of drug and alcohol abuse, that he had taken drugs seven hours prior to the crime, and that the defendant had fresh track marks on his arm at the time he was arrested. Id. at 387. In remanding the case for an evidentiary hearing, this Court held:
Because the record does not conclusively refute some of Patton's allegations of ineffective assistance of counsel, the court should have held an evidentiary hearing. Specifically, the court should have held a hearing to determine if counsel was ineffective in failing to investigate and present evidence that Patton was intoxicated or insane at the time of the shooting. Instead, the court summarily denied this claim stating a strategy must be presumed. If this were the standard, a strategy could be presumed in every case and an evidentiary hearing would never be required on claims of ineffective assistance of counsel. To the contrary, it was necessary for the court to conduct an evidentiary hearing to determine whether counsel was acting competently when she chose not to present an intoxication or insanity defense to a charge of first-degree premeditated murder, where she had conceded that the defendant shot the victim.
Id. at 386-87. Compare Kitchen v. State, 764 So.2d 868, 869 (Fla. 4th DCA 2000) ("Counsel may make a tactical decision not to pursue a voluntary intoxication defense, but a trial court's finding that such a decision was tactical usually is inappropriate without an evidentiary hearing."), with Stewart v. State, 801 So.2d 59, 65 (Fla. 2001) (holding that counsel was not ineffective for failing to employ a voluntary intoxication defense where, at an evidentiary hearing, defense counsel testified that he considered an intoxication defense but determined that it was not a viable defense based on the facts of the case).
The postconviction court denied Reaves' allegation without an evidentiary hearing despite evidence that his counsel had evidence supporting this defense which he did not present. Specifically, the judge found that voluntary intoxication was not an available defense since the defendant's expert witness testified during a proffer that Reaves was not so intoxicated that he did not know right from wrong. This reasoning obscures the difference between an insanity defense and a voluntary intoxication defense. Insanity is a complete defense if, at the time of the crime, the defendant was incapable of distinguishing between right and wrong as a result of a mental disease or defect.[8] Voluntary intoxication is a separate theory and is available to negate specific intent, such as the element of premeditation essential in first-degree murder.[9] In order to successfully assert the defense of voluntary intoxication, "the defendant must come forward *939 with evidence of intoxication at the time of the offense sufficient to establish that he was unable to form the intent necessary to commit the crime charged." Rivera v. State, 717 So.2d 477, 485 n. 12 (Fla.1998) (quoting Linehan v. State, 476 So.2d 1262, 1264 (Fla.1985)). Voluntary intoxication was an available defense in this instance, and the record is inconclusive as to why counsel did not advance the defense. As Reaves' claim of ineffective assistance was legally sufficient and was not refuted by the record, it was error not to afford him an evidentiary hearing on this issue.
In a related subissue, Reaves argues that his attorney was ineffective in not retaining experts who could testify properly as to the effects of substance abuse combined with his mental defects. Reaves also asserts that his counsel was ineffective during voir dire for failing to question jurors about their reaction to the defense of voluntary intoxication, substance abuse, and mental defects. The voluntary intoxication defense was not advanced at trial, so counsel was not ineffective in failing to question the jurors relative to a defense which he never utilized.
In Reaves' second allegation of ineffective assistance of counsel, he asserts that his trial counsel was ineffective during jury selection because prospective jurors Shirley Brennan, Michael Moore, Mary Bilbrey, and John Ujvarosi revealed possible prejudice or bias during voir dire and trial counsel failed to follow up by asking more in-depth questions relative to this potential bias. Reaves also contends that his trial counsel was ineffective because he did not articulate a basis for challenging jurors Brennan, Moore, Bilbrey, and Ujvarosi. Reaves asserts that he would have been entitled to a new trial had trial counsel preserved the claim by challenging the four jurors for cause. The trial court denied this claim as legally insufficient because Reaves failed to assert how the alleged deficiencies caused prejudice.
We find that this claim does not provide a sufficient ground for relief since Reaves cannot show that his counsel's performance was deficient.[10] Specifically, Reaves has not shown that trial counsel had a reasonable basis to assert for-cause challenges. He attempts to surmount this problem by alleging that if counsel had "followed up" during voir dire with more specific questions, there would have been a basis for a for-cause challenge.[11] This is mere conjecture. We accordingly find that the trial court properly denied relief as to this subissue.
Reaves next asserts that the trial record establishes his counsel was ineffective because he failed to prepare for and cross-examine numerous witnesses presented by the State. The trial court analyzed this in detail and denied the claim, finding:
In Claim III(B)4, the Defendant claims that his trial counsel failed to conduct depositions in preparation for trial, and failed to effectively cross-examine the State's witnesses at trial. He states Lieutenant Kenneth Hamilton, the shift supervisor the night of the *940 incident, apparently was never deposed and was quickly cross-examined. He makes no allegation about what the lieutenant should have been asked either at [the] deposition or on cross-examination. This claim is conclusory, and does not warrant an evidentiary hearing. See Kennedy v. State, 547 So.2d 912, 913 (Fla.1989). Dr. Leonard Walker was only cross-examined for "a minimal three transcript pages" and was not asked about the angle of the bullets, according to the Defendant. The record demonstrates that Dr. Walker did testify about the angle of the bullets on direct examination.... Mr. Kirschner followed up on this line of questioning on cross-examination, contrary to the Defendant's allegations.... The Defendant also claims Kirschner's cross-examination of Howard Whitaker and Detective Perry Pisani was minimal. The Defendant does not identify what more defense counsel could have asked the detective, nor how the "minimal" cross-examination caused the Defendant to be prejudiced.
The Defendant argues that Whitaker should have been asked whether he saw the actual shooting, and that Kirschner should have followed up the witness's account that the Defendant was running as a person ran who was under fire in the Vietnam War. The record demonstrates that during his direct testimony, Whitaker stated that as he was pulling out from behind the convenience store, he heard some loud reports. As he and his trainee approached the store, he saw a black male run from a parked vehicle across the front of the building. Whitaker located the deputy, called 911 and stayed with the deputy until the ambulance arrived. It is obvious that the witness did not see the actual events.... Contrary to the Defendant's allegations, Kirschner followed through with questions that emphasized the witness had not seen the actual shooting. Kirschner also asked the witness about seeing the Defendant's "kind" of run in Vietnam.... None of the claims raised in this portion of Claim III, satisfy either prong of the Strickland test.
Upon review of the record, we agree with the trial court's analysis. Reaves does not indicate what favorable information defense counsel could have elicited from these witnesses, nor does he show how he was prejudiced. As Reaves' claim was legally insufficient, we affirm the trial court's denial of relief. See Magill v. State, 457 So.2d 1367, 1370 (Fla.1984) (holding that the defendant's claim that his counsel was ineffective in failing to cross-examine certain witnesses was insufficient since he failed to allege what material may have been brought out in cross-examination).
In the fourth subclaim regarding ineffective assistance of counsel, Reaves summarily asserts that defense counsel conceded guilt without first consulting him and also conceded inculpatory evidence. As to Reaves' assertion that counsel conceded guilt, the entire substance of this claim as presented in his 3.850 motion stated: "Counsel conceded guilt without consulting Reaves of his strategy or decision." Reaves failed to allege how his counsel conceded guilt or when during the trial this occurred. His claim as to the concession regarding inculpatory evidence was equally vague, asserting merely that his counsel was ineffective because he erroneously failed to object when the State introduced evidence of drug use and "other bad acts by Mr. Reaves." We hold that both of these grounds were insufficiently pled, and hence Reaves was not entitled to relief on these allegations. Conclusory allegations are insufficient to warrant an evidentiary hearing. Sireci v. State, 773 So.2d 34, 40 *941 n. 11 (Fla.2000) ("A defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing.") (quoting Kennedy v. State, 547 So.2d 912, 913 (Fla.1989)).

B. Penalty Phase Ineffectiveness
Reaves also asserts that his trial counsel was ineffective in the penalty phase. To establish prejudice during the penalty phase, Reaves must show that "there is a reasonable probability that, absent trial counsel's error, `the sentencer... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" Cherry v. State, 781 So.2d 1040, 1048 (Fla.2000) (quoting Strickland, 466 U.S. at 695, 104 S.Ct. 2052).
Reaves first contends that counsel unreasonably failed to introduce various mitigating circumstances, like Reaves's impoverished childhood, his military background, his drug addiction, his sister's death which occurred shortly after he returned from Vietnam, and his giving assistance to a jail guard in 1973. The trial court denied this claim, finding that "[a]ny of the proposed additional evidence would have been either irrelevant or cumulative." We agree. Defense counsel presented numerous witnesses who discussed Reaves' childhood in detail and further testified as to his drug addiction when he returned home from Vietnam. Two men who served with Reaves also testified as to the conditions of fighting the war in Vietnam, including drug usage. A review of the record supports the trial court's finding that the evidence which he now seeks to introduce is cumulative.[12] The only evidence identified in Reaves' postconviction motion which was not presented during the penalty phase includes the fact that Reaves suffered from a venereal disease, that one of his sisters died shortly after he returned from Vietnam, and that he helped a prison guard when two inmates attacked the guard. There is no reasonable probability that these additional factors would have affected the balance of aggravating and mitigating circumstances.[13] The only meaningful mitigation which was not introduced involved the fact that Reaves assisted a jail guard. As the trial court recognized, however, any benefit to be obtained by this evidence would have been negated by more recent evidence that while Reaves was in prison, he hit a deputy in the face and later entered a guilty plea to battery on a law enforcement officer.
In Reaves' final claim regarding ineffective assistance of counsel, he contends that during the penalty phase counsel failed to object to references to Reaves' first trial and conceded "key issues." The trial court denied this claim, finding that "the record demonstrates that no such references to a prior trial and conviction were made" and that the remainder of his claims were conclusory. After reviewing the record, we likewise find no references *942 were made to Reaves' initial trial and find that the trial court properly denied the claim.
Reaves also includes a one-sentence laundry list of other acts which he asserts constitute ineffective assistance of counsel, including counsel's "failure to provide Dr. Weitz with records from Washington, D.C.; failure to object to qualification of retired FBI agent Robert K. Ressler as an expert in military records; failure to object to the court rushing proceedings and denial of due process; [and] failure to object to the introduction of prejudicial and inflammatory testimony." These allegations are legally insufficient as Reaves has failed to describe these claims with any particularity and has failed to assert how these actions prejudiced his defense. Conclusory allegations are insufficient to meet a defendant's burden of establishing a prima facie case that he is entitled to postconviction relief. Freeman, 761 So.2d at 1061. Accordingly, we affirm the trial court's ruling on this issue.

C. Brady Claims
Reaves asserts that he is entitled to an evidentiary hearing to establish whether a Brady[14] violation occurred and that the State withheld a box which contained a portion of a marijuana cigarette, notes, and automobile registrations. The trial court summarily denied this claim as insufficiently pled. We agree.
In order to establish a Brady violation, a defendant must prove:
(1) The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.
Way v. State, 760 So.2d 903, 910 (Fla.2000) (quoting Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). Reaves' allegations are legally insufficient. He does not indicate or allege how these items are exculpatory or impeaching. In fact, the marijuana cigarette would be consistent with Hinton's trial testimony in which he stated that he and Reaves had smoked marijuana after the shooting. We hold that the trial court properly denied this claim as conclusory and legally insufficient. See Asay v. State, 769 So.2d 974, 982 (Fla.2000) (holding that a trial court does not err in refusing to grant an evidentiary hearing as to Brady claims which were insufficiently pled).

D. Entitlement to Public Records
Reaves asserts that all relevant files and records from public agencies may not have been provided. The trial court summarily denied this claim, finding that Reaves had waived it:
At a status conference on October 5, 1998, defense counsel gave an update to the Court on the status of the records production, and advised the Court that the public record production had been completed, unless something unexpected arose. The Court informed counsel that if any additional public records requests from this date forward materialized, a motion must be filed with the trial court, and an emergency hearing would be held.... No motions were filed with the Court.
As this Court has recognized, where a defendant fails to pursue a claim for public records at the trial court, he waives such claim and cannot raise it on appeal with this Court. Johnston v. State, 708 So.2d 590, 592-93 (Fla.1998) (holding that the trial court properly denied the defendant's motion for an evidentiary hearing on the *943 public records request because "at the Huff hearing Johnston's postconviction counsel volunteered that while not waiving his right to make the public records requests, he was not going to pursue them at that time"); Lopez v. Singletary, 634 So.2d 1054, 1058 (Fla.1993) ("[A]ny postconviction movant dissatisfied with the response to any requested access must pursue the issue before the trial judge or that issue will be waived."). This Court, accordingly, finds that the trial court correctly decided this claim.

E. Juror Misconduct
In Reaves' next claim, he asserts that the postconviction court erred in denying his juror misconduct claim without first permitting juror interviews. His amended 3.850 motion alleges the factual basis behind this claim as follows:
Undersigned counsel has learned through investigation that Jonathan Jay Kirschner, trial counsel, was approached by two female jurors after the trial was concluded and related that one of the other jurors, Mr. John Ujvarosi, was discussing the guilt of Mr. Reaves from the beginning of the trial, long before they were able to discuss such issues and after they were instructed not to discuss such issues.
In order to be entitled to juror interviews, Reaves must present "sworn allegations that, if true, would require the court to order a new trial because the alleged error was so fundamental and prejudicial as to vitiate the entire proceedings." Johnson v. State, 804 So.2d 1218, 1225 (Fla.2001). Juror interviews are not permitted relative to any matter that inheres in the verdict itself and relates to the jury's deliberations.[15] To this end, any jury inquiry is limited to allegations which involve an overt prejudicial act or external influence,[16] such as a juror receiving prejudicial nonrecord evidence or an actual, express agreement between two or more jurors to disregard their juror oaths and instructions. Id. at 100.
In the instant case, Reaves has alleged that one juror attempted to discuss guilt prematurely. This contention does not involve any agreement among the other jurors to disregard their oaths and ignore the law, nor does it imply that the jury was influenced by external sources or improper material. Reaves' assertion, which involves a lone juror's understanding of the jury instructions, is "a matter which essentially inheres in the verdict itself"; hence, juror interviews are not permissible. See, e.g., Sims v. State, 444 So.2d 922, 925 (Fla.1983) ("A jury's consideration of a defendant's failure to testify is not the same as considering evidence outside the record, but is rather an example of its misunderstanding or not following the instructions of the court. Such misunderstanding is a matter which essentially inheres in the verdict itself.... Therefore the court did not err in refusing to allow further questioning of the juror."); see also Devoney v. State, 717 So.2d 501, 504 (Fla.1998) (discussions of matters which the jury was *944 explicitly instructed to disregard does not constitute an overt act of misconduct that would permit inquiry into the verdict); Johnson, 593 So.2d at 210 (questioning the jury foreman about misunderstandings of the jury instructions during their deliberations in the penalty phase of a capital case is testimony which "essentially inheres in the verdict" and hence is inadmissible). Consequently, as Reaves has not sufficiently alleged any fact which involves an overt prejudicial act that would necessitate a new trial, the trial court was correct in prohibiting juror interviews.

F. Cumulative Error
Reaves' final claim contends that he is entitled to relief based on cumulative errors. This claim has been rendered moot in light of our decision to remand this case for an evidentiary hearing. See, e.g., Thompson v. State, 796 So.2d 511, 515 n. 5 (Fla.2001) ("Thompson's cumulative error claim ... has been rendered moot in light of our decision to remand this case for an evidentiary hearing.").

CONCLUSION
For the reasons expressed above, we remand this case to the trial court for an evidentiary hearing on the claims relating to whether counsel was ineffective for failing to raise a voluntary intoxication defense and the related subclaims as addressed above. We affirm the trial court's denial of Reaves' postconviction motion in all other aspects.
It is so ordered.
SHAW, PARIENTE, and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
WELLS, C.J., dissents with an opinion, in which HARDING and LEWIS, JJ., concur.
WELLS, C.J., dissenting.
I dissent because I do not find that appellant has demonstrated that an evidentiary hearing is required in respect to the claim of ineffective assistance of counsel based upon the failure to pursue involuntary intoxication as a defense. First, I observe that even in appellant's brief this issue is not pursued in any sort of depth. I conclude that this is because it is clear from the trial record that what the defense did use as the basis for its defense was inconsistent with voluntary intoxication. Second, I find no reason to find the trial court's order on this issue to be erroneous. The trial court stated:
The Defendant next argues in Claim III(B)7, that his attorney unreasonably failed to properly present Reaves' mental impairment to the jury, in order to negate the specific intent required for first-degree murder. The Defendant claims that during the penalty phase, the defense expert presented evidence of the Defendant's history of cocaine abuse and polysubstance abuse, and of Defendant's claim that he blamed the shooting of the deputy on the fact that Reaves was under the influence of cocaine and panic and paranoia. However, he maintains that trial counsel failed to investigate his client's substance abuse history or to instruct and prepare Dr. Weitz to do so during the guilt phase. The Defendant argues that had counsel presented the mental impairment with the substance abuse, this would have caused the jury to convict the Defendant of a lesser included crime, rather than first degree murder.
The record demonstrates that voluntary intoxication was not an available defense. Dr. Weitz testified on proffer that even though the Defendant had been smoking cocaine and drinking beer, he was not so intoxicated to prevent *945 Reaves from knowing right from wrong. (A copy of the trial transcript, pages 1517-1518, is attached as exhibit "5.") Therefore, defense counsel could not have combined evidence of the Vietnam Syndrome with evidence of drug or alcohol abuse to negate the specific intent required for first-degree murder, as the focus must be on the defendant's intoxication. See State v. Bias, 653 So.2d 380, 382 (Fla.1995).
Claim III(B)8 states that Mr. Kirschner failed to investigate and discover additional evidence of Reaves' intoxication, to wit: Reaves' extreme nervousness and excessive sweating when picked up by the taxi driver; witness Hinton's testimony that he and Reaves were smoking marijuana on the night of the offense; the remains of a marijuana cigarette found at Hinton's residence; testimony of family and friends that Reaves' had a long-standing history of substance abuse; and military records that Reaves underwent drug treatment counseling just prior to his discharge from the military. The record refutes these claims.
The record demonstrates that Mr. Kibbee, the taxi driver, picked up the Defendant the day after the murder, in Melbourne, Florida. Still, Mr. Kirschner asked Mr. Kibbee whether he had ever seen anyone under the influence of crack cocaine, and whether they appeared to be nervous. (A copy of the trial transcript, page 1232, is attached as exhibit "6.") The driver's testimony did not go undiscovered by counsel. Eugene Hinton testified on cross-examination that he and Reaves smoked marijuana on the day of the offense, after the Defendant shot Deputy Raczkoski. (A copy of the trial transcript, page 1202, is attached as exhibit "7.") Furthermore, Mr. Hinton testified that the Defendant appeared to be normal to him, after the shooting, except that he was frightened or excited. (A copy of the trial transcript, pages 1208-09, is attached as exhibit "8.") See also Reaves, 639 So.2d at 3.
The assertions and affidavits attached to the motion, which allege that Mr. Reaves had a long-standing history of substance abuse, do nothing to establish that the Defendant was under the influence of drugs or alcohol at the time of the murder. Therefore, such evidence would not negate the specific intent requirement for first-degree murder. Mr. Kirschner could not be deemed ineffective for failing to discover this evidence.
State v. Reaves, No. 86-729-CF, order at 7-8 (Fla. 19th Cir. Ct. order filed Feb. 10, 2000) (emphasis added).
HARDING and LEWIS, JJ., concur.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993).
[2] Reaves asserts that he is entitled to relief because: (1) the trial court erroneously denied Reaves an opportunity to fully develop his claim of ineffective assistance of counsel and his claim of error under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), during an evidentiary hearing; (2) the prosecutor wrongfully engaged in inflammatory and improper comments; (3) he is entitled to additional public records; (4) he is innocent of first-degree murder and is innocent of the death penalty; (5) he should be entitled to interview the jurors; (6) he was denied his constitutional right to confront witnesses; (7) the penalty phase jury instructions were improper; (8) the State's decision to seek the death penalty was based upon racial considerations; (9) there were excessive security measures taken at trial which implicate the fairness of his trial; (10) Florida's capital sentencing statute is unconstitutional; (11) he is entitled to a new trial based on the impact of cumulative errors; (12) he was denied adversarial testing due to judicial bias; (13) the jury was not a fair cross-section of the community; and (14) he is insane for the purpose of execution.
[3] We deny the following claims as they either were raised or should have been raised on direct appeal and accordingly are procedurally barred: (2) allegedly improper prosecutorial comments; (6) whether Reaves was denied his right to confrontation; (7) improper penalty phase jury instructions; (9) excessive security measures taken at trial; (10) the constitutionality of Florida's capital sentencing statute; (12) alleged judicial bias based on various rulings during the trial; and (13) whether the jury was a fair cross-section of the community.
[4] We find that his claim relative to whether the State's decision to seek the death penalty was based upon racial considerations is insufficiently pled.
[5] Reaves has prematurely raised the issue of whether he is insane for the purpose of execution, and hence we deny this claim without prejudice. See Fla. R.Crim. P. 3.811(c) ("No motion for a stay of execution pending hearing, based on grounds of the prisoner's insanity to be executed, shall be entertained by any court until such time as the Governor of Florida shall have held appropriate proceedings for determining the issue pursuant to the appropriate Florida Statutes.").
[6] Pursuant to Strickland, Reaves must make the following showing in order to prevail on this claim:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
[7] Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).
[8] Nowitzke v. State, 572 So.2d 1346, 1355 n. 5 (Fla.1990) ("Florida follows the M'Naghten Rule, which states that any expert testimony... to be relevant, must concern whether [the defendant] (1) was incapable of distinguishing right from wrong (2) as a result of mental infirmity, disease, or defect.") (internal quotation marks omitted); Hall v. State, 568 So.2d 882, 885 (Fla.1990) ("[A]n accused is not criminally responsible if, at the time of the alleged crime, the defendant was by reason of mental infirmity, disease, or defect unable to understand the nature and quality of his act or its consequences or was incapable of distinguishing right from wrong.").
[9] Gardner v. State, 480 So.2d 91, 92 (Fla. 1985) ("Voluntary intoxication is a defense to the specific intent crimes of first-degree murder and robbery."); Burch v. State, 478 So.2d 1050, 1051 (Fla.1985) ("We explicitly recognized [in Cirack v. State, 201 So.2d 706 (Fla. 1967),] that the defense of voluntary intoxication was available to negate specific intent....").
[10] Since Reaves fails to establish the deficiency prong which is a prerequisite under Strickland, it is not necessary to address whether he has made a showing of prejudice. See Strickland, 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").
[11] Although trial counsel indicated during the jury selection that he would have struck these four jurors if he had had any peremptory challenges left, there is no basis to find that trial counsel could have challenged these jurors for cause.
[12] See, e.g., Jennings v. State, 583 So.2d 316, 321 (Fla.1991) ("It is not negligent to fail to call everyone who may have information about an event. Once counsel puts on evidence sufficient, if believed by the jury, to establish his point, he need not call every witness whose testimony might bolster his position.").
[13] Occhicone v. State, 768 So.2d 1037, 1049 (Fla.2000) ("In order to obtain a reversal of his death sentence on the ground of ineffective assistance of counsel at the penalty phase, [the defendant] must show `both (1) that the identified acts or omissions of counsel were deficient, or outside the wide range of professionally competent assistance, and (2) that the deficient performance prejudiced the defense such that, without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different.'").
[14] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[15] § 90.607(2)(b), Fla. Stat. (1999) ("Upon an inquiry into the validity of a verdict or indictment, a juror is not competent to testify as to any matter which essentially inheres in the verdict or indictment."); Johnson v. State, 593 So.2d 206, 210 (Fla.1992) ("[A] verdict cannot be subsequently impeached by conduct which inheres in the verdict and relates to the jury's deliberations.") (quoting Mitchell v. State, 527 So.2d 179, 181 (Fla.1988)).
[16] Baptist Hosp. of Miami, Inc. v. Maler, 579 So.2d 97, 99 (Fla.1991) ("The distinction drawn by the cases quoted above [which permit juror interviews] is between overt prejudicial acts, and subjective impressions or opinions of jurors. To the extent an inquiry will elicit information about overt prejudicial acts, it is permissible; to the extent an inquiry will elicit information about subjective impressions and opinions of jurors, it may not be allowed.").