# Supreme Court of Florida

_____

No. SC15-1276
_____

**PAUL DUROUSSEAU,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[January 31, 2017]

PER CURIAM.

Paul Durousseau appeals an order of the Fourth Judicial Circuit Court denying his motion to vacate his conviction of first-degree murder and sentence of death, filed pursuant to Florida Rule of Criminal Procedure 3.851. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const. For the reasons discussed below, we affirm the circuit court's denial of postconviction relief but vacate Durousseau's sentences and remand for resentencing in light of Hurst v. Florida, 136 S. Ct. 616 (2016), as interpreted by Hurst v. State (Hurst), 202 So. 3d 40 (Fla. 2016).

## STATEMENT OF FACTS

We discussed the facts of this case in our opinion on direct appeal. See

Durousseau v. State, 55 So. 3d 543, 548-50 (Fla. 2010). Paul Durousseau was

sentenced to death for the murder of Tyresa Mack. In 1999, Mack's sister and

stepfather found Mack's body in her apartment. She was naked from the waist

down, and a white cord was wrapped around her neck. Durousseau's DNA was

found inside Mack's vagina. In 2003, Durousseau was indicted on five counts of

first-degree murder for the deaths of five women. The similar methodology of the

crimes caused investigators to conclude that Mack was one of Durousseau's

victims. Durousseau was arrested for Mack's murder.

In 2007, Durousseau was found guilty of the first-degree murder of Mack.

After the penalty phase, the jury voted ten to two to impose a death sentence. The

trial court found four aggravating factors: (1) Durousseau was previously

convicted of a felony involving the use or threat of violence; (2) the murder was

committed while the defendant was engaged in the commission of a robbery or

sexual battery; (3) the murder was committed for pecuniary gain; and (4) the

murder was especially heinous, atrocious, or cruel. The trial court did not find any

statutory mitigating circumstances, but it did find sixteen nonstatutory mitigating

circumstances.[1] Ultimately, the trial court sentenced Durousseau to death. Id. at 550. On December 9, 2010, this Court rejected all of Durousseau's claims[2] on direct appeal. Id. at 564, cert. denied, 132 S. Ct. 149 (2011).

---

1. The trial court found the following sixteen nonstatutory mitigators: (1) Durousseau was raised in a broken home (little weight); (2) Durousseau was raised without the benefit of his natural father and lost the love and support of his stepfather at an early age (little weight); (3) Durousseau grew up in poverty and came from a deprived background (little weight); (4) Durousseau was raised in a violent neighborhood and was exposed to violence and the threat of violence to his person on a daily basis (little weight); (5) Durousseau personally witnessed his stepfather physically abuse his mother (moderate weight); (6) Durousseau was beaten as a means of discipline as a child (little weight); (7) Durousseau worked continuously through his adult life (little to moderate weight); (8) Durousseau enlisted and served in the United States Army for approximately six years (moderate weight); (9) Durousseau has supported his two children and is a loving and caring father (little weight); (10) Durousseau has been a loving, respectful son to his mother and cared for her during several periods of illness and incapacitation (moderate weight); (11) Durousseau has been a good brother to his siblings and to other family members, helping to care for and watch over his cousins (moderate to significant weight); (12) Durousseau saved his cousin's life and his brother's life (moderate weight); (13) Durousseau has the support of family and friends who continue to love him (little weight); (14) Durousseau has alcohol abuse issues on both the maternal and paternal sides of his family; despite this, Durousseau has never abused alcohol or illicit drugs (very little weight); (15) society can be protected by a life sentence without parole (very little weight); (16) Durousseau has exhibited good behavior during the trial of this cause (little weight).

2. Durousseau raised the following claims on direct appeal: (1) the trial court erred in admitting Williams rule evidence of the two other murders; (2) the trial court erred in denying Durousseau's motion for judgment of acquittal of felony murder with robbery as the underlying offense and that the evidence is legally insufficient to support the pecuniary gain aggravator; (3) the trial court erred in rejecting an expert's opinion testimony regarding mental mitigation in favor of conflicting lay testimony; (4) the evidence was insufficient to support a first-degree murder conviction; and (5) the trial court erred in denying Durousseau's motion to declare Florida's capital sentencing scheme

- 3 -

On October 1, 2012, Durousseau filed a motion for postconviction relief in the circuit court. Durousseau raised two claims in his postconviction motion: (1) that counsel was ineffective for failing to request additional physical and psychiatric testing; and (2) that counsel was ineffective for failing to conduct a meaningful voir dire. However, before the evidentiary hearing, Durousseau abandoned his first claim. On April 9, 2015, the postconviction court began an evidentiary hearing that lasted two days. Ultimately, the postconviction court denied Durousseau's claim that counsel had failed to secure additional physical and mental testing. Durousseau appealed to this Court, arguing that trial counsel was ineffective because she failed to conduct meaningful voir dire. While his appeal was pending in this Court, the United States Supreme Court decided <u>Hurst v. Florida</u>, 136 S. Ct. 616 (2016), holding that Florida's death penalty sentencing statute violated the Sixth Amendment. In light of <u>Hurst v. Florida</u>, Durousseau filed supplemental briefing, arguing that his death sentence should be vacated.

## ANALYSIS

Durousseau alleges that (1) his counsel was ineffective during voir dire, and (2) his death sentence violates <u>Hurst v. Florida</u>. We first reject Durousseau's claim

unconstitutional under <u>Ring v. Arizona</u>, 536 U.S. 584 (2002). <u>Durousseau</u>, 55 So. 3d at 550.

that his trial counsel, Ann Finnell, was ineffective during voir dire.[3]  We then hold

that Durousseau's death sentence is unconstitutional under Hurst v. Florida.

Ineffective Assistance of Counsel

First, Durousseau argues that Finnell was ineffective for asking more

collective questions than individual questions.  Second, Durousseau argues that the

postconviction court erred in finding that Finnell was not ineffective for failing to

inquire further of, and move to strike, two specific jurors and one alternate juror.

We reject both arguments.

In accordance with Strickland v. Washington, 466 U.S. 668 (1984), we

review claims of ineffective assistance of counsel as follows:

> First, the claimant must identify particular acts or omissions of the
> lawyer that are shown to be outside the broad range of reasonably
> competent performance under prevailing professional standards.
> Second, the clear, substantial deficiency shown must further be
> demonstrated to have so affected the fairness and reliability of the
> proceeding that confidence in the outcome is undermined.

Long v. State, 118 So. 3d 798, 805 (Fla. 2013) (quoting Bolin v. State, 41 So. 3d

151, 155 (Fla. 2010)).  Additionally,

---

3. In light of our decision that Hurst v. Florida requires us to vacate Durousseau's death sentence, we decline to address Durousseau's argument that Finnell was ineffective because she failed to adequately inquire of the venire members about their attitudes toward aggravating and mitigating factors affecting the imposition of the death penalty and did not sufficiently question the voir dire with the specific aggravators and mitigators that applied to Durousseau.

[t]here is a strong presumption that trial counsel's performance was not deficient. See Strickland, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). "Judicial scrutiny of counsel's performance must be highly deferential." Id. "[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." Occhicone v. State, 768 So. 2d 1037, 1048 (Fla. 2000). Furthermore, where this Court previously has rejected a substantive claim on the merits, counsel cannot be deemed ineffective for failing to make a meritless argument. Melendez v. State, 612 So. 2d 1366, 1369 (Fla. 1992).

In demonstrating prejudice, the defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Long, 118 So. 2d at 805-06 (parallel citations omitted).

Because both prongs of the Strickland test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo.

Shellito v. State, 121 So. 3d 445, 451 (Fla. 2013) (citing Mungin v. State, 79 So. 3d 726, 737 (Fla. 2011); Sochor v. State, 883 So. 2d 766, 771-72 (Fla. 2004)).

With respect to claims that counsel was ineffective during voir dire, the "[e]ffective assistance of trial counsel includes a proficient attempt to empanel a

competent and impartial jury through the proper utilization of voir dire, challenges to venire members for cause, and the proper employment of peremptory challenges to venire members." Nelson v. State, 73 So. 3d 77, 85 (Fla. 2011). The test for competency and impartiality is whether a juror is capable of placing any bias aside and is willing to render a verdict recommendation based exclusively on the evidence and instruction of law presented at trial. Id.

In reviewing an attorney's performance, we must be highly deferential and make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. In light of the challenges in evaluating counsel's performance, we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. If the defendant fails to make a showing of one Strickland prong, it is not necessary to analyze whether the defendant satisfies the other prong. Id. at 691-692.

To establish deficiency, a defendant must first specifically identify acts or omissions of counsel that were manifestly outside the wide range of reasonably competent performance under prevailing professional norms. Lynch v. State, 2 So. 3d 47, 56-57 (Fla. 2008). Counsel will not be deemed deficient where her actions constituted a strategy within the bounds of professional norms. Occhicone, 768

So. 2d at 1048 (concluding it was a reasonable strategy to not present additional evidence at trial to ensure the defendant would have the first and last word during closing argument). "The issue is not what present counsel or this Court might now view as the best strategy, but rather whether the strategy was within the broad range of discretion afforded to counsel actually responsible for the defense." Id. at 1049.

First, Durousseau argues that Finnell was ineffective for asking more collective questions than individual questions that would have led to an informed method of exercising juror challenges. We affirm the postconviction court's finding that Finnell's collective questioning did not prejudice Durousseau.

Durousseau suggests that he may have been prejudiced by trial counsel's failure to ask individual questions of the venire members or by counsel's failure to follow up with additional questions. Specifically, Durousseau hypothesizes that Finnell lacked a complete understanding of the jury in light of her failure to ask more individual questions. Durousseau likewise hypothesizes that as a consequence, Finnell's jury strikes were based on incomplete information. We have previously rejected ineffective assistance claims like these.

> To show prejudice, [the defendant] argues that [his trial counsel] could possibly have learned more about the jurors' views and used his peremptory challenges in a different manner to obtain a more defense-friendly jury. Such speculation fails to rise to the level of ineffective assistance under Strickland.

Johnson v. State, 921 So. 2d 490, 503-04 (Fla. 2005) (footnote omitted). We have likewise rejected "alleg[ations] that if counsel had 'followed up' during voir dire with more specific questions, there would have been a basis for a for-cause challenge" as "mere conjecture." Reaves v. State, 826 So. 2d 932, 939 (Fla. 2002); see also Wade v. State, 156 So. 3d 1004, 1033 (Fla. 2014) ("Wade's claim that 'there would have been a basis for a for cause challenge if counsel had followed up during voir dire with more specific questions is speculative.' " (quoting Green v. State, 975 So. 2d 1090, 1105 (Fla. 2008))).

Durousseau's arguments are likewise conjectural and speculative. Durousseau asserts that Finnell's failure to ask sufficient individual questions precluded her from obtaining the information necessary to make intelligent use of juror challenges. Durousseau does not identify what information individual questioning would have revealed, nor how that information could have changed his jury make-up or lead to a different result. Accordingly, we affirm the postconviction court's finding that Durousseau did not suffer any prejudice.

Second, Durousseau argues that the postconviction court erred in finding that Finnell was not ineffective for failing to exhaust all of her peremptory challenges, failing to request additional challenges, and failing to challenge the jury panel. We again affirm the postconviction court's findings in denying these claims.

The postconviction court found that Durousseau did not identify any prospective juror that would have been better qualified to sit on the jury than the jury eventually seated. Durousseau's argument on appeal contains the same defect. We have held that this defect is fatal to this type of claim of ineffective assistance of counsel. See, e.g., Peterson v. State, 154 So. 3d 275, 282 (Fla. 2014) ("Peterson does not point to any particular venire member [who] would have been better qualified to serve in place of a seated juror."). Accordingly, we affirm the postconviction court's finding.

Durousseau also specifically argues that Finnell should have further inquired into three of the potential jurors: (1) alternate juror Markley, (2) juror Norrie, and (3) juror Cummins. The postconviction court rejected Durousseau's ineffective assistance of counsel claims regarding Finnell's questioning and challenging of these jurors. We likewise affirm the postconviction court's findings with regard to these three jurors.

As to juror Markley, the postconviction court found that Finnell's actions did not prejudice Durousseau because juror Markley was an alternate juror and never deliberated in Durousseau's trial. We agree. Assuming that further questioning would have revealed information demonstrating, for instance, juror Markley's bias against Durousseau, "prejudice can be shown only where one who was actually biased against the defendant sat as a juror." Carratelli v. State, 961

So. 2d 312, 324 (Fla. 2007) (emphasis added); see also Dillbeck v. State, 964 So. 2d 95, 102 (Fla. 2007) (upholding a postconviction court's finding, which stated, "Two of the complained of jurors were alternates only who did not participate in the jury's verdict. Dillbeck cannot show prejudice based on alternate jurors [who] never served.") Because juror Markley served only as an alternate juror, we affirm the postconviction court's finding.

As to jurors Norrie and Cummins—who served on Durousseau's jury and deliberated as to his guilt and punishment—we likewise affirm the postconviction court's findings that Finnell was not deficient for her allegedly insufficient questioning of these two jurors. Durousseau does not identify the particular information that further questioning of these two jurors would have revealed, and so cannot demonstrate that this undiscovered information would have produced grounds to disqualify either juror. As we earlier noted, a postconviction movant cannot demonstrate counsel's ineffectiveness with speculative assertions that further questioning of a juror during voir dire could have developed more information that may have disqualified the juror. See Wade, 156 So. 3d at 1033; Green, 975 So. 2d at 1105; Johnson, 921 So. 2d at 503-04; Reaves, 826 So. 2d at 939.

Durousseau also argues that Finnell was ineffective for failing to strike alternate juror Markley and jurors Norrie and Cummins from the jury. The

postconviction court also rejected this claim, and we affirm. A postconviction movant "must demonstrate that [a particular juror] was actually biased, not merely that there was doubt about [the juror's] impartiality." Owen v. State, 986 So. 2d 534, 550 (Fla. 2008). Durousseau does not allege that any of the three were actually biased and thus prejudiced Durousseau at trial. Rather, Durousseau merely raises the possibility that alternate juror Markley and jurors Norrie and Cummins might have deserved a for-cause challenge, and counsel was ineffective for failing to strike these potentially problematic jurors. Accordingly, we affirm the postconviction court's rejection of this claim. Id.

Durousseau also argues that we should not apply the "actual bias" standard in this case because Finnell's failure to better inquire of jurors is responsible for Durousseau's inability to point to specific information about juror bias. We reject this contention because it is the postconviction movant's responsibility to demonstrate juror bias, irrespective of the alleged failures of trial counsel. See, e.g., Boyd v. State, 200 So. 3d 685, 699 (Fla. 2015). Once the postconviction movant identifies the juror's bias, the movant must identify the manner in which trial counsel was deficient by failing to uncover information during voir dire that would have demonstrated the bias. See id. Accordingly, we reject Durousseau's argument and determine that we appropriately apply the "actual bias" standard in this case.

Durousseau has failed to demonstrate that his counsel was ineffective during voir dire.  Accordingly, we reject his ineffective assistance of counsel claims.

## Hurst v. Florida & Hurst

In Hurst v. Florida, the United States Supreme Court held that Florida's capital sentencing scheme is unconstitutional because "[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.  A jury's mere recommendation is not enough."  136 S. Ct. at 619.  Durousseau's death sentence was imposed under an unconstitutional capital sentencing statute.  Hurst v. Florida and Hurst apply retroactively to Durousseau, whose sentence became final in 2010.  See Mosley v. State, 41 Fla. L. Weekly S629 (Fla. Dec. 22, 2016).  The remaining question is whether the Hurst error was harmless beyond a reasonable doubt.

A Hurst error is capable of harmless error review.  See Hurst, 202 So. 3d at 67.  Here we determine that the Hurst error during Durousseau's penalty phase proceeding was not harmless beyond a reasonable doubt.  As this Court explained in Hurst:

> The harmless error test, as set forth in Chapman [v. California, 386 U.S. 18 (1967),] and progeny, places the burden on the state, as the beneficiary of the error, to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict or, alternatively stated, that there is no reasonable possibility that the error contributed to the conviction.

- 13 -

Hurst, 202 So. 3d at 68 (quoting State v. DiGuilio, 491 So. 2d 1129, 1138 (Fla. 1986)).  The Court further discussed the lens through which harmless error should be evaluated:

> Where the error concerns sentencing, the error is harmless only if there is no reasonable possibility that the error contributed to the sentence.  See, e.g., Zack v. State, 753 So. 2d 9, 20 (Fla. 2000).  Although the harmless error test applies to both constitutional errors and errors not based on constitutional grounds, "the harmless error test is to be rigorously applied," DiGuilio, 491 So. 2d at 1137, and the State bears an extremely heavy burden in cases involving constitutional error.  Therefore, in the context of a Hurst v. Florida error, the burden is on the State, as the beneficiary of the error, to prove beyond a reasonable doubt that the jury's failure to unanimously find all the facts necessary for imposition of the death penalty did not contribute to Hurst's death sentence in this case.  We reiterate:
>
>> The test is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test.  Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.  The focus is on the effect of the error on the trier-of-fact.
>
> DiGuilio, 491 So. 2d at 1139.  "The question is whether there is a reasonable possibility that the error affected the [sentence]."  Id.

Hurst, 202 So. 3d at 68 (alteration in original).  Regarding the right to a jury trial, it must be clear beyond a reasonable doubt that a rational jury would have unanimously found that there were sufficient aggravating factors and that the aggravating factors outweighed the mitigating circumstances.  See id. at 44.

- 14 -

In the present case, the jury did not make any of the requisite factual findings beyond a reasonable doubt. Rather, the jury only issued a recommendation of death by a vote of ten to two. Further, although the aggravating circumstance of a prior violent felony was found unanimously by virtue of Durousseau's previous murder convictions, whether this aggravating circumstance was sufficient to impose death requires a unanimous jury determination. Hurst, 202 So. 3d at 44. Moreover, there is no way of knowing if the jury found any of the other three aggravating circumstances unanimously or, if any aggravators were unanimously found, whether the jury also unanimously found those aggravators sufficient to qualify for a death sentence. Further, we cannot conclude that the two jurors who voted to recommend life found that the aggravation outweighed the mitigation.

Accordingly, we conclude that the Hurst violation was not harmless, and Durousseau is entitled to a new penalty phase. As we have done for other capital defendants, we reject Durousseau's argument that section 775.082(2), Florida Statutes (2015), entitled him to be resentenced to life imprisonment. See Hurst, 202 So. 3d at 44, 63-66.

**CONCLUSION**

Because Durousseau's death sentence was imposed in violation of the Sixth Amendment right to a jury determination of every critical finding necessary for the

imposition of the death sentence and Florida's independent right to jury trial, and because we conclude that the Hurst error is not harmless beyond a reasonable doubt, we vacate Durousseau's death sentence and remand for a new penalty phase.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., concurs in part and dissents in part with an opinion, in which POLSTON, J., concurs.
PERRY, Senior Justice, concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in part and dissenting in part.

I concur with the decision to affirm the denial of relief regarding Durousseau's conviction. But I dissent from the decision to require a new penalty phase. As I have previously explained, Hurst v. Florida, 136 S. Ct. 616 (2016), should not be given retroactive effect. See Mosley v. State, 41 Fla. L. Weekly S629, 2016 WL 7406506 (Fla. Dec. 22, 2016) (Canady, J., concurring in part and dissenting in part).

POLSTON, J., concurs.

PERRY, Senior Justice, concurring in part and dissenting in part.

I concur with the majority's decision to affirm the postconviction court's denial of relief as it pertains to Durousseau's convictions and determination that

- 16 -

the Sixth Amendment requires that we vacate Durousseau's death sentence. However, because Florida law requires that Durousseau be sentenced to life in prison as a consequence of his unconstitutional death sentence, I disagree with the majority's decision to remand for a new penalty phase proceeding instead of remanding for imposition of a life sentence. See § 775.082(2), Fla. Stat. (2016).

As I explained fully in Hurst v. State, 202 So. 3d 40, 75-76 (Fla. 2016) (Perry, J., concurring in part and dissenting in part), there is no compelling reason for this Court not to apply the plain language of section 775.082(2), Florida Statutes. Because the majority of this Court has determined that Durousseau's death sentence was unconstitutionally imposed, Durousseau is entitled to the clear and unambiguous statutory remedy that the Legislature has specified:

> In the event the death penalty in a capital felony is held to be unconstitutional by the Florida Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death for a capital felony shall cause such person to be brought before the court, and the court shall sentence such person to life imprisonment as provided in subsection (1).

See § 775.082(2), Fla. Stat. (emphasis added). The plain language of the statute does not rely on a specific amendment to the United States Constitution, nor does it refer to a specific decision by this Court or the United States Supreme Court. Further, it does not contemplate that all forms of the death penalty in all cases must be found unconstitutional. Instead, the statute uses singular articles to describe the circumstances by which the statute is triggered. Indeed, the statute repeatedly

- 17 -

references a singular defendant being brought before a court for sentencing to life imprisonment. I consequently cannot agree that the statute was intended as a fail-safe mechanism for when this Court or the United States Supreme Court declared that the death penalty was categorically unconstitutional. Cf. Hurst v. State, 202 So. 3d at 40 (Perry, J., concurring in part and dissenting in part).

An Appeal from the Circuit Court in and for Duval County,
        Jack Marvin Schemer, Judge - Case No. 162003CF010182AXXXMA

Richard Adam Sichta of The Sichta Firm, LLC, Jacksonville, Florida; and Billy Horatio Nolas, Chief, Capital Habeas Unit, Office of the Federal Public Defender, Tallahassee, Florida,

        for Appellant

Pamela Jo Bondi, Attorney General, Carine L. Mitz, Assistant Attorney General, and Robert James Morris, III, Assistant Attorney General, Tallahassee, Florida,

        for Appellee